IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| INTERNATIONAL MARKET BRANDS, | ) | |
| Plaintiff and | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO:  1:09-cv-00081 ERIE |
| | ) | Judge Maurice B. Cohill |
| MARTIN INTERNATIONAL | ) | |
| CORPORATION, | ) | |
| Defendant and | ) | |
| Counterclaim Plaintiff. | ) | |
| _____ | ) | |
| | ) | |
| MARTIN INTERNATIONAL | ) | |
| CORPORATION, | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C.A. CURTZE, INC., | ) | |
| JACOBSTEIN FOOD SERVICE, INC., and | ) | |
| NORTHERN FROZEN FOODS, INC. d/b/a) | | |
| NORTHERN HASEROT, | ) | |
| Third-Party Defendants. | ) | FILED ELECTRONICALLY |

**MARTIN INTERNATIONAL CORPORATION'S ANSWER TO THE COMPLAINT,
COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant Martin International Corp. hereby responds to the Complaint as follows:

**PARTIES AND JURISDICTION**

1.     Defendant is without sufficient information to admit or deny the allegations contained in Paragraph 1 of the Plaintiff's Complaint and, therefore, denies the same.

2.     Admits.

3.      The allegations contained within Paragraph 3 state conclusions of law to which no response is required.  To the extent that a response is required to Paragraph 3, Defendant denies the same.

4.      Defendant denies the allegations contained in Paragraph 4 of the Plaintiff's Complaint.

5.      The allegations contained within Paragraph 5 state conclusions of law to which no response is required.  To the extent that a response is required to Paragraph 5, Defendant denies the same.

## STATEMENT OF FACTS

6.      Defendant is without sufficient information to admit or deny the allegations contained in Paragraph 6 of the Plaintiff's Complaint and, therefore, denies the same.

7.      Admits.

8.      The allegations of Paragraph 8 refer to a written document the terms of which speak for themselves.   Further answering, Defendant denies that Plaintiff's Exhibit B is a full and complete copy of the June 26, 2007 letter and attachments.

9.      Defendant is without sufficient information to admit or deny the allegations contained in Paragraph 9 of the Plaintiff's Complaint and, therefore, denies the same.

10.      Defendant is without sufficient information to admit or deny the allegations contained in Paragraph 10 of the Plaintiff's Complaint and, therefore, denies the same.

11.      The allegations of Paragraph 11 refer to a written document the terms of which speak for themselves.

12.      Admits.

13.     Defendant denies the allegations and characterization of any discussions between the parties contained in Paragraph 13 of the Plaintiff's Complaint.

14.     Defendant denies the allegations contained in Paragraph 14 of the Plaintiff's Complaint.  Further answering, Defendant asserts that Paragraph 14 mischaracterizes the nature of the various marks at issue and Defendant specifically references United States Trademark Registration No. 2,433,486 for BLACK PEARL and Plaintiff's United States Trademark Application Serial No. 77/159,769 also for BLACK PEARL in response thereto.

15.     Defendant denies the allegations contained in Paragraph 15 of the Plaintiff's Complaint.

16.     Defendant denies the allegations contained in Paragraph 16 of the Plaintiff's Complaint.

17.     Defendant denies the allegations contained in Paragraph 17 of the Plaintiff's Complaint.

## Count I
### (Declaratory Judgment)

18.     The Defendant hereby realleges and incorporates by reference the allegations contained in paragraphs 1-17 above as if fully set forth herein.

19.     The allegations contained within Paragraph 19 state conclusions of law to which no response is required.  To the extent that a response is required to Paragraph 19, Defendant denies the same.

20.     The allegations contained within Paragraph 20 state conclusions of law to which no response is required.  To the extent that a response is required to Paragraph 20, Defendant denies the same.

21.     Defendant admits that it has brought an Opposition, Proceeding No. 91183669 in the Trademark Trial and Appeal Board against Plaintiff's United States Trademark Application Serial No. 77/159,769.  Further answering, Defendant denies the remainder of the allegations asserted in Paragraph 21 as they attempt to characterize the nature of the proceeding or communications between the parties.

22.     The allegations contained within Paragraph 22 state conclusions of law to which no response is required.  To the extent that a response is required to Paragraph 22, Defendant denies the same.

## AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to state a cause of action upon which relief may be granted.

2.     Plaintiff's claim must be denied to the extent that its claim is a result of its own or another party's actions, omissions, and/or course of conduct.

3.     Plaintiff's claim is barred by the doctrine of unclean hands.

4.     Plaintiff's claim is barred by the doctrine of laches.

5.     Plaintiff's claim is barred by one or all of the doctrines of waiver, relief and equitable estoppel.

6.     Defendant hereby gives notice that it intends to rely upon such other and further defenses as may become available through discovery or otherwise and reserves its right to assert and rely upon such further defenses as of right or by appropriate motion.

WHEREFORE, Defendant requests that this Court issue an order that the claim against it be dismissed with prejudice, costs and attorney's fees in favor of Defendant.

## COUNTERCLAIMS

This is a Counterclaim by Martin International Corporation ("Martin") against International Market Brands ("IMB") for federal trademark infringement pursuant to 15 U.S.C. § 1114, false designation and representation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a), and for a judgment that IMB is not entitled to registration of its United States Trademark Application Serial Nos. 77/159,769 and 77/609,203 pursuant to 15 U.S.C. § 1119. Martin's claims arise out of IMB's unlawful and confusing use of Martin's incontestable registered trademark BLACK PEARL.

## PARTIES

1.      Plaintiff-in-Counterclaim Martin is a Massachusetts corporation, with an address of 7 Fid Kennedy Avenue, Boston, MA 02210.

2.      Upon information and belief, Defendant-in-Counterclaim IMB is a Pennsylvania corporation, with an address of P.O. Box 797, 1717 E. 12th Street, Erie, PA 16512.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1116, 1121, as this action arises under the United States trademark laws.

4.      This Court has personal jurisdiction over IMB because IMB is located in Pennsylvania, conducts business in Pennsylvania and has committed acts of trademark infringement within this judicial district.

5.      Venue is proper pursuant to 15 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred and continue to occur in this judicial district.

## STATEMENT OF FACTS

**I.      Martin's Seafood Business**

6.      Martin has operated for over twenty-three (23) years as an internationally recognized producer, importer and exporter of high quality fresh and frozen seafood products.

7.      Martin provides a full line of seafood products including organic and wild-caught salmon, scallops, char, sable, sea bass, trout and other seafood products under the trademark BLACK PEARL.

8.      Since at least 1992, Martin has continuously and substantially used the BLACK PEARL trademark in connection with its seafood products.

9.      Martin provides procurement, processing, packaging, distribution and sales of its BLACK PEARL seafood products.

10.      Martin's BLACK PEARL seafood products are handled in one of the largest, fully-integrated seafood distribution centers that operates under FDA guidelines for food hygiene and food safety.

11.      Martin's BLACK PEARL salmon are processed and delivered to purchasers in whole and fillet forms throughout North America within hours of capture, preserving the freshness of the meat.

12.      Martin sells both fresh and frozen BLACK PEARL branded seafood products.

13.      Martin provides its BLACK PEARL seafood products to some of the finest restaurants and through top retail establishments and food markets.

14.      Martin also sells its BLACK PEARL seafood products to seafood processors, food distributors, retail outlets, and institutional food service entities.

15.     Since at least as early as 1992, Martin has spent substantial time and money in advertising and promoting its BLACK PEARL products.

16.     Through its efforts over the years, Martin has established a strong and loyal customer base and is known throughout its trading area as a provider of premium products in connection with its BLACK PEARL brand.

17.     Martin's BLACK PEARL mark is known by its customers and associated with Martin's uncompromising standards and high quality products.  Such good will extends throughout the United States and abroad.

18.     The widespread recognition and goodwill associated with Martin's BLACK PEARL mark is the result of Martin's continuous marketing efforts and by virtue of the high quality of Martin's BLACK PEARL branded products.

## II.     Martin's BLACK PEARL Registrations

19.     Martin is the owner of the following six (6) U.S. Trademark Registrations (the "BLACK PEARL Registrations"):

Word Mark:   **BLACK PEARL (and Design)**
Design Mark:



|  |  |  |
|---|---|---|
| | Registration No.: | 2,221,109 |
| | Registration Date: | February 2, 1999 |
| | App. Date: | October 22, 1996 |
| | Date of First Use: | January 1, 1992 |
| Goods: | Class 29 - seafood products, namely, farm raised Atlantic salmon, sea scallops, bay scallops, farm raised Artic char, farm raised mahi mahi, Maine pink shrimp, yellowfin tuna and swordfish | |

Mark:        **BLACK PEARL**
                Registration No.:     2,433,486
                Registration Date:    March 6, 2001
                App. Date:         March 4, 2000
                Date of First Use:     January 1, 1992
Goods:      Class 29 - seafood products, namely, farm raised Atlantic salmon, sea scallops, bay scallops, farm raised Artic char, farm raised mahi mahi, Maine pink shrimp, yellowfin tuna and swordfish

Mark:        **BLACK PEARL NATURAL CHOICE**
                Registration No.:     3,090,816
                Registration Date:    May 9, 2006
                App. Date:         November 1, 2004
                Date of First Use:     August 2004
Goods:      Class 29 - salmon

Word Mark:   **BLACK PEARL ORGANIC SHETLAND SALMON (and Design)**
Design Mark:



                Registration No.:     3,138,769
                Registration Date:    September 5, 2006
                App. Date:         September 16, 2005
                Date of First Use:     January 21, 2006
Goods:      Class 29 - organic salmon

Word Mark:   **HOOKFISH      SUSTAINABLE      FISHERY      RENEWABLE RESOURCE ECO FRIENDLY BLACK PEARL (and Design)**
Design Mark:



|  | Registration No.: | 3,151,367 |
|--|--|--|
|  | Registration Date: | October 3, 2006 |
|  | App. Date: | October 25, 2004 |
|  | Date of First Use: | May 31, 2005 |
| Goods: | Class 29 - wild salmon, halibut and sablefish | |

| Mark: | **BLACK PEARL ORGANIC** | |
|--|--|--|
|  | Registration No.: | 3,240,695 |
|  | Registration Date: | May 8, 2007 |
|  | App. Date: | September 15, 2005 |
|  | Date of First Use: | November 3, 2006 |
| Goods: | Class 29 - organic salmon | |

True and accurate copies of these BLACK PEARL Registrations are attached hereto as Exhibit A.

20.    In accordance with Sections 7(b), 22 and 33(a) of the Lanham Trademark Act, Martin's BLACK PEARL Registrations constitute *prima facie* evidence of the validity of the registered marks and of the registrations thereof, Martin's ownership of the marks shown in said registrations, and Martin's exclusive right to use the marks in commerce in connection with the goods named therein, without condition or limitation.

21.    In accordance with 15 U.S.C. § 1115(b), Martin's BLACK PEARL trademarks, Registration Nos. 2,221,109 and 2,433,486, have achieved incontestable status for the listed goods.

## III.    IMB's Applications to Register BLACK PEARL

22.    IMB is the owner of the following pending United States Trademark Applications (the "IMB Applications"):

| Word Mark: | **BLACK PEARL** | |
|--|--|--|
|  | Application No.: | 77/159,769 |
|  | App. Date: | April 18, 2007 |
|  | Date of First Use: | January 1, 2006 |

Goods:        Class 29 - fresh pork and frozen pork

Word Mark:   **BLACK PEARL (and Design)**
Design Mark:



Application No.:    77/609,203
App. Date:       November 6, 2008
Date of First Use:    January 1, 2006
Goods:        Class 29 - fresh pork and frozen pork sold to institutional buyers and restaurants, not sold to grocery stores, food markets, and other retail establishments

True and accurate copies of these IMB Applications are attached hereto as <u>Exhibit B.</u>

## IV. <u>IMB's Purchases and Resale of Martin's BLACK PEARL Seafood Products and Willful Infringement</u>

23.     Prior to filing the IMB Applications, IMB, through its licensees, purchased over 4.2 tons of Martin's BLACK PEARL branded seafood products for re-sale.

24.     Upon information and belief, prior to filing the IMB Applications, IMB, through its licensees, re-sold Martin's BLACK PEARL branded seafood products.

25.     By virtue of its purchases of Martin's BLACK PEARL products prior to filing the IMB Applications, IMB had actual or constructive knowledge of Martin's prior trademark rights.

26.     IMB's actions in pursuing the IMB Applications and continued use of the BLACK PEARL mark for its products with knowledge of Martin's prior trademark rights constitute willful infringement of Martin's trademarks.

**V.      IMB's Trademark Infringement**

27.      Martin's date of first use of January 1, 1992 for BLACK PEARL is earlier than any date of use of BLACK PEARL by IMB.

28.      IMB's use of BLACK PEARL, as shown in Application Serial No. 77/159,769, and Martin's use of BLACK PEARL, as shown in Reg. No. 2,433,486, are identical in sound and appearance.

29.      BLACK PEARL is a dominant feature of Martin's Reg. Nos. 2,221,109, 3,138,769 and 3,151,367.   Similarly, BLACK PEARL is a dominant feature of IMB's Application Serial No. 77/609,203.   IMB's use of BLACK PEARL, as shown in Application Serial No. 77/609,203 is also identical in sound and confusingly similar in appearance to Martin's use of BLACK PEARL as shown in Reg. No. 2,221,109 and 2,433,486.

30.      IMB's use of BLACK PEARL and Martin's use of BLACK PEARL create the same commercial impression.

31.      The goods as set forth in the IMB Applications and Martin's BLACK PEARL products are related.

32.      Fresh and frozen pork and fresh and frozen seafood products are both types of meat.

33.      Pork and seafood are both protein food products.

34.      Pork and seafood are marketed as healthy alternatives to red meat, such as beef.

35.      Fresh meat and fresh seafood are typically found in close proximity to each other in a food market that sells both fresh seafood and fresh meat.

36.     Frozen meat and frozen seafood are typically found in close proximity to each other in a food market that sells both frozen seafood and frozen meat.

37.     Pork and seafood both constitute food items which tend to occupy a primary portion of a meal as the main course or entrée.

38.     IMB's Application Serial No. 77/159,769 does not limit the channels of trade through which its BLACK PEARL products travel, nor does it limit the consumers to whom the products are directed.

39.     IMB's Application Serial No. 77/609,203 limits the channels of trade through which its BLACK PEARL products travel to "institutional buyers and restaurants, not sold to grocery stores, food markets, and other retail establishments."

40.     There are no limits on the channels of trade or consumers for Martin's BLACK PEARL products as shown in the BLACK PEARL Registrations.

41.     IMB's BLACK PEARL products and Martin's BLACK PEARL products are sold or offered through the same channels of trade and to the same customers.

42.     IMB's BLACK PEARL pork products are sold in retail food markets.

43.     IMB's BLACK PEARL branded pork is sold in Metropolitan Market, a retail food market that also sells fresh and frozen seafood.

44.     IMB's BLACK PEARL branded pork is sold by three licensees: Northern Haserot ("Haserot"); C.A. Curtze ("Curtze"), and Jacobstein Food Service ("Jacobstein").  Haserot, Curtze, and Jacobstein are food service distributors that also sell fresh and frozen seafood.

45.     IMB's BLACK PEARL pork products have been featured, using the BLACK PEARL trademark, on restaurant menus.  Similarly, Martin's BLACK PEARL seafood products have been featured, using the BLACK PEARL trademark, on restaurant menus.

46.     IMB's BLACK PEARL pork products have been featured in restaurants that also serve seafood products.

47.     IMB's BLACK PEARL pork products have been advertised together with seafood products.

48.     In view of the similarity between the respective marks and the related nature of the products of the respective parties, IMB's BLACK PEARL marks so closely resemble Martin's BLACK PEARL marks so as to be likely to cause confusion or to cause mistake or to deceive.

49.     IMB's use of BLACK PEARL falsely suggests an association with or approval by Martin of IMB's BLACK PEARL products and will create confusion in the marketplace.

50.     Customers are likely to believe that IMB's BLACK PEARL products come from or are authorized, endorsed or sponsored by Martin.

51.     Customers are likely to expect that IMB's BLACK PEARL products, similarly marked and creating an identical commercial impression, are of the same quality as Martin's BLACK PEARL branded goods.

52.     IMB's continued use of BLACK PEARL and registration thereof, if permitted, will lessen the capacity of Martin's BLACK PEARL trademark to identify and distinguish Martin's products, thereby causing harm to Martin.

### COUNT I
**(Federal Trademark Infringement)**

53.     Martin incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

54.     Martin is the owner of the following valid United States Trademark Registrations: 2,221,109, 2,433,486, 3,090,816, 3,138,769, 3,151,367, and 3,240,695.

55.     IMB's use of BLACK PEARL is identical or confusingly similar to the marks shown in Martin's BLACK PEARL Registrations in appearance, sound and commercial impression.

56.     Martin has used the trademark BLACK PEARL and not abandoned use of its BLACK PEARL mark since a date prior to any date on which IMB may rely.

57.     Martin has clear priority over IMB by virtue of its registration of the mark BLACK PEARL on the Principal Register prior to Defendants' date of first use of the mark BLACK PEARL.

58.     IMB's BLACK PEARL products are related to Martin's BLACK PEARL products as set forth in Martin's BLACK PEARL Registrations.

59.     IMB's mark BLACK PEARL and the IMB Applications are virtually identical in appearance and sound and create the same commercial impression as Martin's BLACK PEARL Registrations.

60.     Consumers are likely to mistakenly believe that IMB's BLACK PEARL pork products are related to, affiliated with, or sponsored by Martin.

61.     Martin has no control over the quality of the goods that IMB provides under the BLACK PEARL marks.  Any failure, neglect, or default by IMB or negative public perception of the goods sold by IMB under the BLACK PEARL marks will reflect adversely upon Martin.

62.     The favorable goodwill that Martin has developed in its valuable BLACK PEARL trademark is at risk as a result of IMB's use of the BLACK PEARL marks.

63.     IMB's use of the BLACK PEARL marks constitutes trademark infringement in violation of Section 32(1) of the Lanham Act., codified at 15 U.S.C. § 1114(1).

64.     IMB had actual or constructive knowledge of Martin's prior rights in the BLACK PEARL mark.

65.     IMB's unauthorized use of Martin's BLACK PEARL trademarks with actual or constructive knowledge constitutes willful infringement of Martin's trademark rights.

66.     Martin has suffered and will continue to suffer irreparable harm, as a result of IMB's use of BLACK PEARL in connection with its pork products.

67.     By reason of the foregoing, Martin has been damaged and Martin is entitled to injunctive relief and damages in an amount to be proven at trial.

### COUNT II
### (False Designation and Representation of Origin and Unfair Competition)

68.     Martin incorporates by reference paragraphs 1 through 67 as if fully set forth herein.

69.     Martin's BLACK PEARL trademarks have been used by Martin and not abandoned since a date prior to any date on which IMB may rely.

70.     Martin's BLACK PEARL marks have acquired secondary meaning.

71.     IMB's use of BLACK PEARL constitutes a false designation of origin and/or a false description or representation which is likely to deceive consumers into believing that IMB's goods originate from, are licensed by, sponsored by, or are in some way affiliated with Martin.

72.     By imitating the BLACK PEARL mark, IMB has falsely designated the origin of its products and is violating and continues to violate 15 U.S.C. § 1125(a).

73.     IMB's BLACK PEARL marks are identical to or confusingly similar to Martin's BLACK PEARL marks in appearance, sound and commercial impression.

74.     IMB's goods sold under its BLACK PEARL marks are related to the goods provided under Martin's BLACK PEARL marks.

75.     In view of the similarity between the respective marks and the related nature of the products of the respective parties, IMB's BLACK PEARL mark so closely resembles Martin's BLACK PEARL trademarks so as to be likely to cause confusion or to cause mistake or to deceive in violation of 15 U.S.C. § 1125(a).

76.     Martin has no control over the quality of the goods that IMB provides under the BLACK PEARL marks.  Any failure, neglect, or default by IMB or negative public perception of IMB of the goods sold by IMB under the BLACK PEARL marks will reflect adversely upon Martin.

77.     IMB had actual or constructive knowledge of Martin's prior rights in the BLACK PEARL mark.

78.     IMB's use of Martin's BLACK PEARL trademarks with actual or constructive knowledge constitutes willful infringement of Martin's trademark rights.

79.     Martin has suffered and will continue to suffer irreparable harm, as a result of IMB's use of BLACK PEARL in connection with its pork products.

80.     By reason of the foregoing, Martin has been damaged and Martin is entitled to injunctive relief and damages in an amount to be proven at trial.

## COUNT III
### (Invalidation of IMB Applications)

81.     Martin incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

82.     This Court has the authority to determine the right to registration pursuant to section 37 of the Lanham Act, 15 U.S.C. § 1119 et seq. as this case involves Martin's BLACK PEARL Registrations and IMB's Applications to register BLACK PEARL.

83.     IMB has filed United States Trademark Application Serial Nos. 77/159,769 and 77/609,203 with the United States Patent and Trademark Office.

84.     The present dispute and claims asserted by Martin against IMB are connected by the same factual nexus to the issues that would determine the registrability of IMB's Applications.

85.     IMB has put the issue of its ability to register the BLACK PEARL mark in light of Martin's BLACK PEARL Registrations before this Court by filing this declaratory judgment action.

86.     Martin seeks cancellation of IMB's Application Serial Nos. 77/159,769 and 77/609,203 on the grounds that Martin has prior rights to the BLACK PEARL marks on goods in interstate commerce and IMB's use and registration of BLACK PEARL creates a likelihood of confusion as to the source, sponsorship or affiliation of the respective goods of IMB and Martin.

**WHEREFORE**, Martin demands judgment against IMB for the following:

1.     That IMB, its respective agents, servants, employees, officers, directors, successors, licensees and assigns, and all those in active concert or participation with them, be permanently enjoined from:

(a)      using in any form or manner BLACK PEARL in whole or in part in or in connection with any trade name, trademark, service mark, domain name or email address for fresh or frozen meats, including pork;

(b)      expressly or impliedly representing itself or its services as being affiliated in any manner with Martin or as authorized, sponsored, or endorsed by or otherwise connected with Martin and its BLACK PEARL branded products;

(c)      engaging in any conduct which will cause or is likely to cause confusion, mistake or misunderstanding as to the source, affiliation, connection, or association of IMB or their products or services with Martin or its products; and

(d)      otherwise infringing upon the trademark rights of Martin or unfairly competing with Martin in any manner whatsoever.

2.      That the Court find that IMB's acts complained of herein were done willfully and with knowledge of Martin's prior rights and award Martin compensatory damages, treble damages, costs, and attorneys' fees.

3.      That the Court order an accounting of profits IMB wrongfully obtained from its use of the infringing BLACK PEARL marks.

4.      That the Court order that IMB is not entitled to registration with the United States Patent and Trademark Office of its pending Application Serial Nos. 77/159,769 and 77/609,203.

5.      That the Court award Martin such other relief as this Court deems proper.

## MARTIN INTERNATIONAL CORPORATION'S THIRD-PARTY COMPLAINT

Third-Party Plaintiff Martin International Corporation ("Martin") brings this Complaint against Third-Party Defendants C.A. Curtze Co. ("Curtze"), Northern Frozen Foods, Inc. d/b/a Northern Haserot ("Haserot"), and Jacobstein Food Service, LLC ("Jacobstein") (collectively, "Third-Party Defendants") for federal trademark infringement pursuant to 15 U.S.C. § 1114 and false designation and representation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a).  Martin's claims arise out of Third-Party Defendants' unlawful and confusing use of the Martin's incontestable registered trademark BLACK PEARL.

### PARTIES

1.      Third-Party Plaintiff Martin is a Massachusetts corporation, with an address of 7 Fid Kennedy Avenue, Boston, MA 02210.

2.      Upon information and belief, Third-Party Defendant Curtze is a Pennsylvania corporation with a place of business at 1717 E 12TH Street, Erie PA 16511.

3.      Upon information and belief, Third-Party Defendant Haserot is an Ohio corporation with a principal place of business at 21500 Alexander Road, Cleveland, Ohio 44146.

4.      Upon information and belief, Third-Party Defendant Jacobstein is a New York limited liability company with a principal place of business at 15 Airline Drive Rochester, New York 14624.

### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1116, 1121, as this action arises under the United States trademark laws.

6.     This Court has personal jurisdiction over Third-Party Defendants because they have conducted business in the Western District of Pennsylvania and have committed acts of trademark infringement within this judicial district.

7.     Venue is proper pursuant to 15 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred and continue to occur in this judicial district.

## STATEMENT OF FACTS

### I.     Martin's Seafood Business

8.     Martin has operated for over twenty-three (23) years as an internationally recognized producer, importer and exporter of high quality fresh and frozen seafood products.

9.     Martin provides a full line of seafood products including organic and wild-caught salmon, scallops, char, sable, sea bass, trout and other seafood products under the trademark BLACK PEARL.

10.     Since at least 1992, Martin has continuously and substantially used the BLACK PEARL trademark in connection with its seafood products.

11.     Martin provides procurement, processing, packaging, distribution and sales of its BLACK PEARL seafood products.

12.     Martin's BLACK PEARL seafood products are handled in one of the largest, fully-integrated seafood distribution centers that operates under FDA guidelines for food hygiene and food safety.

13.     Martin's BLACK PEARL salmon are processed and delivered to purchasers in whole and fillet forms throughout North America within hours of capture, preserving the freshness of the meat.

14.     Martin sells both fresh and frozen BLACK PEARL branded seafood products.

15.     Martin provides its BLACK PEARL seafood products to some of the finest restaurants and through top retail establishments and food markets.

16.     Martin also sells its BLACK PEARL seafood products to seafood processors, food distributors, retail outlets, and institutional food service entities.

17.     Since at least as early as 1992, Martin has spent substantial time and money in advertising and promoting its BLACK PEARL products.

18.     Through its efforts over the years, Martin has established a strong and loyal customer base and is known throughout its trading area as a provider of premium products in connection with its BLACK PEARL brand.

19.     Martin's BLACK PEARL mark is known by its customers and associated with Martin's uncompromising standards and high quality products.  Such good will extends throughout the United States and abroad.

20.     The widespread recognition and goodwill associated with Martin's BLACK PEARL mark is the result of Martin's continuous marketing efforts and by virtue of the high quality of Martin's BLACK PEARL branded products.

II.     **Martin's BLACK PEARL Registrations**

21.     Martin is the owner of the following six (6) U.S. Trademark Registrations (the BLACK PEARL Registrations):

Word Mark:   **BLACK PEARL (and Design)**
Design Mark:

|                   |                   |
|-------------------|-------------------|
| Registration No.: | 2,221,109         |
| Registration Date: | February 2, 1999 |
| App. Date:        | October 22, 1996  |
| Date of First Use: | January 1, 1992  |

Goods:    Class 29 - seafood products, namely, farm raised Atlantic salmon, sea scallops, bay scallops, farm raised Artic char, farm raised mahi mahi, Maine pink shrimp, yellowfin tuna and swordfish

Mark:    **BLACK PEARL**

|                   |                   |
|-------------------|-------------------|
| Registration No.: | 2,433,486         |
| Registration Date: | March 6, 2001    |
| App. Date:        | March 4, 2000     |
| Date of First Use: | January 1, 1992  |

Goods:    Class 29 - seafood products, namely, farm raised Atlantic salmon, sea scallops, bay scallops, farm raised Artic char, farm raised mahi mahi, Maine pink shrimp, yellowfin tuna and swordfish

Mark:    **BLACK PEARL NATURAL CHOICE**

|                   |                   |
|-------------------|-------------------|
| Registration No.: | 3,090,816         |
| Registration Date: | May 9, 2006      |
| App. Date:        | November 1, 2004  |
| Date of First Use: | August 2004       |

Goods:    Class 29 - salmon

Word Mark:    **BLACK PEARL ORGANIC SHETLAND SALMON (and Design)**
Design Mark:



|                   |                    |
|-------------------|--------------------|
| Registration No.: | 3,138,769          |
| Registration Date: | September 5, 2006 |
| App. Date:        | September 16, 2005 |
| Date of First Use: | January 21, 2006  |

Goods:    Class 29 - organic salmon

WordMark: **HOOKFISH SUSTAINABLE FISHERY RENEWABLE RESOURCE ECO FRIENDLY BLACK PEARL (and Design**

Design Mark:



      Registration No.:      3,151,367
                Registration Date:      October 3, 2006
                App. Date:      October 25, 2004
                Date of First Use:      May 31, 2005
Goods:      Class 29 - wild salmon, halibut and sablefish

Mark:      **BLACK PEARL ORGANIC**
                Registration No.:      3,240,695
                Registration Date:      May 8, 2007
                App. Date:      September 15, 2005
                Date of First Use:      November 3, 2006
Goods:      Class 29 - organic salmon

True and accurate copies of these BLACK PEARL Registrations are attached hereto as Exhibit A.

22.     In accordance with Sections 7(b), 22 and 33(a) of the Lanham Trademark Act, Martin's BLACK PEARL Registrations constitute *prima facie* evidence of the validity of the registered marks and of the registrations thereof, Martin's ownership of the marks shown in said registrations, and Martin's exclusive right to use the marks in commerce in connection with the goods named therein, without condition or limitation.

23.     In accordance with 15 U.S.C. § 1115(b), Martin's BLACK PEARL trademarks, Registration Nos. 2,221,109 and 2,433,486, have achieved incontestable status for the listed goods.

## III.     IMB's Applications to Register BLACK PEARL

24.     International Market Brands ("IMB") is the owner of the following pending United States Trademark Applications (the "IMB Applications"):

Word Mark:     **BLACK PEARL**
                    Application No.:     77/159,769
                    App. Date:          April 18, 2007
                    Date of First Use:   January 1, 2006
Goods:          Class 29 - fresh pork and frozen pork


Word Mark:     **BLACK PEARL (and Design)**
Design Mark:



                    Application No.:     77/609,203
                    App. Date:          November 6, 2008
                    Date of First Use:   January 1, 2006
Goods:          Class 29 - fresh pork and frozen pork sold to institutional buyers and restaurants, not sold to grocery stores, food markets, and other retail establishments

True and accurate copies of these IMB Applications are attached here to as Exhibit B.

25.     On information and belief, based on the substance of the IMB Applications, IMB has allegedly used the names and marks BLACK PEARL for fresh and frozen pork since January 1, 2006.

**IV.**    **IMB's Licenses of the BLACK PEARL Marks to Curtze, Haserot, and Jacobstein**

26.    IMB has licensed use of its BLACK PEARL marks, as identified in the IMB Applications, to Curtze, Haserot, and Jacobstein.

27.    Curtze, Haserot, and Jacobstein have used the IMB BLACK PEARL marks, as identified in the IMB Applications, for the sale of fresh and frozen pork.

**V.**    **Curtze's, Haserot's, and Jacobstein's Purchases and Resales of Martin's BLACK PEARL Seafood Products and Willful Infringement**

28.    Prior to IMB's filing of the IMB Applications, Curtze purchased over 4.2 tons of Martin's BLACK PEARL branded seafood products for re-sale.

29.    Upon information and belief, Curtze has re-sold Martin's BLACK PEARL branded seafood products.

30.    By virtue of its purchases of Martin's BLACK PEARL products, Curtze had actual or constructive knowledge of Martin's prior trademark rights.

31.    Curtze's use of the BLACK PEARL trademark with knowledge of Martin's prior trademark rights constitutes willful infringement of Martin's trademarks.

32.    On information and belief, Haserot purchased Martin's BLACK PEARL seafood products for re-sale.

33.    Upon information and belief, Haserot has re-sold Martin's BLACK PEARL branded seafood products.

34.    By virtue of its purchases of Martin's BLACK PEARL products, Haserot had actual or constructive knowledge of Martin's prior trademark rights.

35.    Haserot's use of the BLACK PEARL trademark with knowledge of Martin's prior trademark rights constitutes willful infringement.

**VI.**     **Trademark Infringement by Curtze, Haserot, and Jacobstein**

36.     Martin's date of first use of January 1, 1992 for BLACK PEARL is earlier than any date of use of BLACK PEARL by Curtze, Haserot or Jacobstein.

37.     Curtze's, Haserot's and Jacobstein's use of BLACK PEARL, as shown in Application Serial No. 77/159,769, and Martin's use of BLACK PEARL, as shown in Reg. No. 2,433,486, are identical in sound and appearance. Curtze's, Haserot's and Jacobstein's use of BLACK PEARL, as shown in Application Serial No. 77/609,203 also is identical in sound and confusingly similar in appearance to Martin's use of BLACK PEARL as shown in Reg. Nos. 2,221,109 and 2,433,486.

38.     BLACK PEARL is a dominant feature of Martin's Reg. Nos. 2,221,109, 3,138,769 and 3,151,367.   Similarly, BLACK PEARL is a dominant feature of IMB's Application Serial No. 77/609,203 as licensed to and used by Curtze, Haserot and Jacobstein.

39.     Curtze's, Haserot's and Jacobstein's use of BLACK PEARL and Martin's BLACK PEARL create the same commercial impression.

40.     The goods sold by Curtze, Haserot and Jacobstein under the BLACK PEARL marks and Martin's BLACK PEARL products are related.

41.     Fresh and frozen pork and fresh and frozen seafood products are both forms of meat.

42.     Pork and seafood are both protein food products.

43.     Pork and seafood are marketed as healthy alternatives to red meat, such as beef.

44.     Fresh meat and fresh seafood are typically found in close proximity to each other in a food market that sells fresh seafood and fresh meat.

45.     Frozen meat and frozen seafood are typically found in close proximity to each other in a food market that sells both frozen seafood and frozen meat.

46.     Pork and seafood both constitute food items which tend to occupy a primary portion of a meal as the main course or entrée.

47.     There are no limits on the channels of trade or consumers for Martin's BLACK PEARL products as shown in the BLACK PEARL Registrations.

48.     Curtze's, Haserot's and Jacobstein's BLACK PEARL products are sold or offered through the same channels of trade as Martin's BLACK PEARL products and to the same customers.

49.     Curtze, Haserot, and Jacobstein are food service distributors that also sell fresh and frozen seafood.

50.     Curtze's, Haserot's and Jacobstein's BLACK PEARL pork products have been featured, using the BLACK PEARL trademark, on restaurant menus.   Similarly, Martin's BLACK PEARL seafood products have been featured, using the BLACK PEARL trademark, on restaurant menus.

51.     Curtze's, Haserot's and Jacobstein's BLACK PEARL pork products have been featured in restaurants that also serve seafood products.

52.     Curtze's, Haserot's and Jacobstein's BLACK PEARL pork products have been advertised together with seafood products.

53.     In view of the similarity between the respective marks and the related nature of the products of the respective parties, Curtze's, Haserot's and Jacobstein's use of BLACK PEARL so closely resemble Martin's BLACK PEARL marks so as to be likely to cause confusion or to cause mistake or to deceive.

54.     Curtze's, Haserot's and Jacobstein's use of BLACK PEARL falsely suggests an association with or approval by Martin of their BLACK PEARL products and will create confusion in the marketplace.

55.     Customers are likely to believe that Curtze's, Haserot's and Jacobstein's BLACK PEARL products come from or are authorized, endorsed or sponsored by Martin.

56.     Customers are likely to expect that Curtze's, Haserot's and Jacobstein's BLACK PEARL products, similarly marked and creating an identical commercial impression, are of the same quality as Martin's BLACK PEARL branded goods.

57.     Curtze's, Haserot's and Jacobstein's use of BLACK PEARL, if permitted, will lessen the capacity of Martin's BLACK PEARL trademark to identify and distinguish Martin's products, thereby causing irreparable harm to Martin.

## COUNT I
### (Federal Trademark Infringement)

58.     Martin incorporates by reference paragraphs 1 through 57 as if fully set forth herein.

59.     Martin is the owner of the following valid United States Trademark Registrations: 2,221,109, 2,433,486, 3,090,816, 3,138,769, 3,151,367, and 3,240,695.

60.     Curtze's, Haserot's and Jacobstein's use of BLACK PEARL is identical or confusingly similar to the marks shown in Martin's BLACK PEARL Registrations in appearance, sound and commercial impression.

61.     Martin has used the trademark BLACK PEARL and not abandoned use of its BLACK PEARL mark since a date prior to any date on which Curtze, Haserot or Jacobstein may rely.

62.     Martin has clear priority over Curtze, Haserot and Jacobstein by virtue of its registration of the mark BLACK PEARL on the Principal Register prior to the Third-Party Defendants' date of first use of the mark BLACK PEARL.

63.     Curtze's, Haserot's and Jacobstein's BLACK PEARL products are similar to Martin's BLACK PEARL products as set forth in Martin's BLACK PEARL Registrations.

64.     Curtze's, Haserot's and Jacobstein's BLACK PEARL marks are virtually identical in appearance and sound and create the same commercial impression as Martin's BLACK PEARL Registrations.

65.     Consumers are likely to mistakenly believe that Curtze's, Haserot's and Jacobstein's BLACK PEARL pork products are related to, affiliated with, or sponsored by Martin.

66.     Martin has no control over the quality of the goods that Curtze, Haserot and Jacobstein provide under the BLACK PEARL marks.  Any failure, neglect, or default by Curtze, Haserot and Jacobstein or negative public perception of the goods sold by Curtze, Haserot and Jacobstein under the BLACK PEARL marks will reflect adversely upon Martin.

67.     The favorable goodwill that Martin has developed in its valuable BLACK PEARL trademark is at risk as a result of Curtze's, Haserot's and Jacobstein's use of the BLACK PEARL marks.

68.     Curtze's, Haserot's and Jacobstein's use of the BLACK PEARL marks constitutes trademark infringement in violation of Section 32(1) of the Lanham Act., codified at 15 U.S.C. § 1114(1).

69.     Curtze and Haserot had actual or constructive knowledge of Martin's prior rights in the BLACK PEARL mark.

70.     Curtze's and Haserot's unauthorized use of Martin's BLACK PEARL trademarks with actual or constructive knowledge constitutes willful infringement of Martin's trademark rights.

71.     Martin has suffered and will continue to suffer irreparable harm, as a result of Curtze's, Haserot's and Jacobstein's use of BLACK PEARL in connection with their pork products.

72.     By reason of the foregoing, Martin has been damaged and Martin is entitled to injunctive relief and damages in an amount to be proven at trial.

## COUNT II
### (False Designation and Representation of Origin and Unfair Competition)

73.     Martin incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74.     Martin's BLACK PEARL trademarks have been used by Martin and not abandoned since a date prior to any date on which Curtze, Haserot or Jacobstein may rely.

75.     Martin's BLACK PEARL marks have acquired secondary meaning.

76.     Curtze's, Haserot's and Jacobstein's use of BLACK PEARL constitutes a false designation of origin and/or a false description or representation which is likely to deceive consumers into believing that their goods originate from, are licensed by, sponsored by, or are in some way affiliated with Martin.

77.     By imitating the BLACK PEARL mark, Curtze, Haserot and Jacobstein have falsely designated the origin of their products and are violating and continue to violate 15 U.S.C. § 1125(a).

78.     Curtze's, Haserot's and Jacobstein's BLACK PEARL marks are identical to or confusingly similar to Martin's BLACK PEARL marks in appearance, sound and in commercial impression.

79.     Curtze's, Haserot's and Jacobstein's goods sold under the BLACK PEARL marks are related to the goods provided under Martin's BLACK PEARL marks.

80.     In view of the similarity between the respective marks and the related nature of the products of the respective parties, Curtze's, Haserot's and Jacobstein's BLACK PEARL marks so closely resemble Martin's BLACK PEARL trademarks so as to be likely to cause confusion or to cause mistake or to deceive in violation of 15 U.S.C. § 1125(a).

81.     Martin has no control over the quality of the goods that Curtze, Haserot and Jacobstein provide under the BLACK PEARL marks.  Any failure, neglect, or default by Curtze, Haserot or Jacobstein or negative public perception of the goods sold by Curtze, Haserot or Jacobstein under the BLACK PEARL marks will reflect adversely upon Martin.

82.     Curtze and Haserot had actual or constructive knowledge of Martin's prior rights in the BLACK PEARL mark.

83.     Curtze's and Haserot's use of Martin's BLACK PEARL trademarks with actual or constructive knowledge constitutes willful infringement of Martin's trademark rights.

84.     Martin has suffered and will continue to suffer irreparable harm, as a result of Curtze's, Haserot's and Jacobstein's use of BLACK PEARL in connection with their pork products.

85.     By reason of the foregoing, Martin has been damaged and Martin is entitled to injunctive relief and damages in an amount to be proven at trial.

**WHEREFORE**, Martin demands judgment against Curtze, Haserot, and Jacobstein for the following:

1.      That Curtze, Haserot and Jacobstein, their respective agents, servants, employees, officers, directors, successors, licensees and assigns, and all those in active concert or participation with them, be permanently enjoined from:

(a)      using in any form or manner BLACK PEARL in whole or in part in or in connection with any trade name, trademark, service mark, domain name or email address for fresh or frozen meats, including pork;

(b)      expressly or impliedly representing itself or its services as being affiliated in any manner with Martin or as authorized, sponsored, or endorsed by or otherwise connected with Martin and its BLACK PEARL branded products;

(c)      engaging in any conduct which will cause or is likely to cause confusion, mistake or misunderstanding as to the source, affiliation, connection, or association of Curtze, Haserot or Jacobstein or their products or services with Martin or its products; and

(d)      otherwise infringing upon the trademark rights of Martin or unfairly competing with Martin in any manner whatsoever.

2.      That the Court find that Curtze's and Haserot's acts complained of herein were done willfully and with knowledge of Martin's prior rights and award Martin compensatory damages, treble damages, costs, and attorneys' fees.

3.      That the Court order an accounting of profits Curtze, Haserot and Jacobstein wrongfully obtained from their use of the infringing BLACK PEARL marks.

4.      That the Court award Martin such other relief as this Court deems proper.


Respectfully submitted,


s/Matthew W. McCullough
Edward W. Goebel, Jr.
PA 06636

- 32 -

Matthew W. McCullough, Esquire
PA 46950
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
Phone:  (814) 870-7602
Fax:  (814) 454-4647
E-mail: egoebel@mijb.com
        mmccullough@mijb.com

Of Counsel:

Eric D. Levin
Jeremy Blackowicz
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, Massachusetts 02109
Phone:  (617) 345-9000
Fax:  (617) 345-9020
E-mail:  jblackowicz@haslaw.com

Attorneys for Defendant
    Defendant, Counterclaim Plaintiff and
    Third-Party Plaintiff

1089009/1133938

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2009, the foregoing Martin International Corporation's Answer To The Complaint, Counterclaim And Third-Party Complaint was filed electronically with the Clerk of Court, using the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's ECF system and constitutes service of this filing under Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure.  Parties may access this filing through the Court's ECF system.

s/ Matthew W. McCullough
Matthew W. McCullough, Esquire