IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL MARKET BRANDS, | ) Docket No.  09-81 |
| | ) |
| Plaintiff and Counterclaim Defendant, | ) (Judge Maurice B. Cohill) |
| | ) |
| | ) Electronically Filed Pleading: |
| vs. | ) |
| | ) |
| MARTIN INTERNATIONAL CORPORATION, | ) **BRIEF IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT OF ANTHONY L. FLETCHER** |
| Defendant and Counterclaim Plaintiff. | ) |
| | ) |
| _____ | ) Filed on behalf of Plaintiff/Counterclaim Defendant, International Market Brands and Third-Party Defendants, C.A. Curtze, Inc., Jacobstein Food Service, Inc., and Northern Frozen Foods, Inc. d/b/a Northern Haserot |
| MARTIN INTERNATIONAL CORPORATION, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| C.A. CURTZE, INC., JACOBSTEIN FOOD SERVICE, INC. and NORTHERN FROZEN FOODS, INC. d/b/a NORTHERN HASEROT, | ) Counsel of record for these parties: |
| | ) Richard A. Lanzillo, Esq. |
| | ) PA Id No. 53811 |
| | ) Neal R. Devlin, Esq. |
| Third-Party Defendants. | ) PA Id No. 89223 |
| | ) Knox McLaughlin Gornall & Sennett, P.C. |
| | ) 120 West 10th Street |
| | ) Erie, PA 16501 |
| | ) Telephone (814) 459-2800 |
| | ) Facsimile (814) 453-4530 |
| | ) Email  rlanzill@kmgslaw.com |
| | )          ndevlin@kmgslaw.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN INTERNATIONAL CORPORATION, | ) ) ) | Docket No. 09-81 |
| Third-Party Plaintiff, | ) ) | (Judge Maurice B. Cohill) |
| v. | ) ) | |
| C.A. CURTZE, INC., JACOBSTEIN FOOD SERVICE, INC. and NORTHERN FROZEN FOODS, INC. d/b/a NORTHERN HASEROT, | ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT OF ANTHONY L. FLETCHER

### INTRODUCTION

Application of the law to a set of facts is not a proper subject for expert testimony. Martin International Corporation ("Martin") has submitted an expert report, prepared by Attorney Anthony L. Fletcher ("Atty. Fletcher"), in which Atty. Fletcher provides a detailed legal analysis of Martin's claims in this matter. That report contains no less than 25 legal citations that he argues are applicable to this case. Atty. Fletcher, in fact, defines the subject matter of his report as an "Application of the Lapp Factors to this case." Atty. Fletcher has no experience or training in any industry relevant to this case, did not perform any survey or other analytic processes, and brings no other specialized knowledge or training. Instead, he is an experienced trademark lawyer who has essentially written a legal brief, which Martin has dressed in expert report

clothing.  Atty. Fletcher's opinion regarding how the law should apply to this case, even from his self-described "most experienced eye in the room," is simply a transparent attempt to supplant the role of Judge and Jury in this matter.  Such an attempt violates the Federal Rules of Evidence regarding expert testimony, and, therefore, Atty. Fletcher's report should be stricken and he should not be allowed to testify.

**ARGUMENT**

**A.  Experts are not permitted to testify regarding the application of law.**

While Federal Rule of Evidence 702 permits expert testimony on certain matters if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, it is black-letter law that expert *legal* testimony is not permissible because it is not for witnesses to instruct the trier of fact as to applicable principles of law – it is for the judge.  See e.g.  Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 510 (2d Cir. 1977); Berry v. City of Detroit, 25 F.3d 1342, 1353 (6th Cir. 1994); Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92 (1st Cir. 1997); United States v. Sollenberger, 2008 U.S. Dist. LEXIS 71955 (M.D. Pa. 2008); Paul Morelli Design, Inc. v. Tiffany & Co., 200 F. Supp. 2d 482, 486 (E.D. Pa. 2002).  Further, while Federal Rule of Evidence 704 permits expert testimony regarding the ultimate issue in a case, this Rule does not allow experts to tell the trier of fact what conclusions to draw from the facts and applicable law.  Marx, 550 F.2d at 510.  Put another way, an expert cannot simply apply what he believes to be the law to a set of facts.

In Bausch & Lomb, Inc. v. Alcon Lab., Inc., 79 F. Supp. 2d 252, 257-58 (W.D.N.Y. 2000), the Court addressed whether an expert in a patent case could present certain testimony.  Two aspects of the testimony at issue in Bausch & Lomb are very relevant to this case.  First, the expert intended on offering testimony relating to "what is required for a patent to be valid."  Id.

2

at 258.  Included in this testimony was going to be the witnesses opinion about what various statutes require for a patent to be valid.  The Court ruled that this testimony was inadmissible because "it is clearly 'calculated to invade the province of the court to determine the applicable law and to instruct the jury as to that law.'" Id. (quoting United States v. Scop, 846 F.2d 135, 140 (2d Cir. 1988)(additional internal quotation marks omitted).  The Court also analyzed whether the expert's proposed testimony regarding trade secrets and unfair competition was admissible.  Under this category of the testimony, the expert intended on discussing "what constitutes a trade secret, misappropriation of a trade secret, and unfair competition under New York law." Id. at 259.  The Court made short work of this testimony, holding "This proposed testimony is clearly inadmissible. It is not Harmon's role to instruct the jury on the applicable law."  Id.

     Related to this testimony, the expert also intended on testifying with regard to several of the facts underlying the trade secret claims.  Id.  The Court precluded all of this testimony, stating

> How [the expert] is competent to testify about any of these matters is beyond me.  He was not involved in any way in any of the relevant events, and his knowledge is strictly secondhand. Moreover, I cannot see how any of this proposed testimony constitutes expert opinion testimony under Rule 704.  [The expert's] purpose in testifying is to render his opinions about certain matters, not to testify about the facts of this case. Although he does state that he intends to testify that B&L engaged in unfair competition by misappropriating Alcon's trade secrets, that is a matter solely for the jury to decide, and is not appropriate "expert" opinion testimony. . . . whether B&L engaged in unfair competition is well within the ken of a properly-instructed jury to decide. See Scop, 846 F.2d at 140 (expert witness "made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud').

Id.

3

**B.**     **Martin's expert attempts to usurp the role of the Judge in the present case**

With what he presumes to be "the most experienced eye in the room" (Expert Report, pg. 8), Atty. Fletcher's expert report usurps the Court's role in construing the applicable law in this matter. From his qualifications, to his analysis, Atty. Fletcher's expert report is inarguably a legal brief that does nothing more than apply the facts that Martin believes are material to this case to what Atty. Fletcher believes is the applicable law.

Atty. Fletcher devotes approximately five pages of his report to his qualifications. Those qualifications paint the picture of an experienced and well-regarded trademark lawyer who has litigated many high profile trademark cases. What those qualifications do not include is any experience or training relevant to the subject matter of this case. Atty. Fletcher is not experienced in food production, sale or distribution; he is not qualified to conduct, and did not conduct, any market survey's or other statistical analysis related to the marks at issue; and Atty. Fletcher has no experience in advertising or marketing. The sum total of Atty. Fletcher's experience is as a trademark lawyer. This experience does not qualify him to provide any admissible expert testimony in this case.

The balance of Atty. Fletcher's report is nothing more than an application of the Lapp factors to the statement of material facts that Martin filed with its motion for summary judgment. Atty. Fletcher expressly defines his task as the "Application of the Lapp Factors to this case." (Expert Report, p. 8). Consistent with this understanding, Atty. Fletcher identifies each of the ten Lapp factors, argues the law that is applicable to each of them, and then argues whether the specific factor, when applied to the facts identified in Martin's Concise Statement of Material Facts, result in that factor favoring Martin's claim. This analysis is precisely what the Court must do in ruling on a motion for summary judgment (albeit with the benefit of hearing the IMB's Parties' facts and arguments), and what the Jury must do at trial.

4

Two examples from Atty. Fletcher's report illustrate the fact that it is nothing more than a legal brief. First, in addressing the first <u>Lapp</u> factor, the degree of similarity between the marks at issue, Atty. Fletcher begins by quoting case law describing the importance of that factor. (Expert Report, p. 11). He then goes on to state his opinion with regard to how this factor is analyzed in different factual situations (e.g. non-competing goods, directly competing goods with dissimilar marks, etc.). After providing his legal opinion, Atty. Fletcher then conclusorily states, "The degree of similarity between th[e BLACK PEARL word] marks is total. It is notable that Lapp also states that 'where the names are identical. . . the names in themselves are evidence of likelihood of confusion.' In my opinion, this factor weighs very heavily in favor of a likelihood of confusion." (Expert Report, p. 12). Notably, Atty. Fletcher does not cite to any market surveys regarding how consumers view the marks at issue; he does not cite to any advertising or marketing expertise about the use of the marks at issue in their commercial context; and he does not provide any other specialized knowledge or information about the marks, their similarities or their use. Instead, he simply cites to law that support Martin's case, looks at two words marks out of the several marks at issue in this case, ignores the commercial context in which even those two marks are used, and opines that this factor weighs "very heavily in favor of a likelihood of confusion." This analysis is nothing more than an application of what Atty. Fletcher believes to be the law to the facts that Martin has relied upon it this case.

The second illustrative example is Atty. Fletcher's analysis of the fourth <u>Lapp</u> factor – the length of time the defendant has used the mark without evidence of actual confusion. This portion of Atty. Fletcher's report is one of the few substantive sections in which he does not directly cite to any case law. Thus, if there were any part of Atty. Fletcher's where he provided anything beyond his legal expertise, one would expect to find it here. A review of this section,

however, discloses the fact that Atty. Fletcher's only expertise is in the law.  In discussing this factor, Atty. Fletcher states his opinion of the law, and then spends three paragraphs stating his opinions as to when and why people complain about food and other products.  Based on his "experience" Atty. Fletcher states that evidence of actual confusion normally arises when consumers complaint about a product. (Expert Report, p. 16)  Atty. Fletcher does not provide any analysis as to why this is his opinion; he does not cite to any data supportive of this opinion; and does not detail any other basis for that opinion.  Atty. Fletcher's next statements, however, disclose the knowledge base on which he is drawing to reach these conclusions.  Atty. Fletcher states that, in his experience as a consumer of food and an observer of other people eating, most people do not report complaints they have with food.  "I know that people — at least in the families with whose members I have shared meals over the decades — sometimes don't like the food they eat . . . At most, the dissatisfied consumer (e.g., myself or my spouse) makes a mental note to avoid repeating that experience." (Expert Report, pp. 16-17).  Atty. Fletcher's entire analysis with regard to this factor could be conducted by any person how has ever consumed food.  Nothing about Atty. Fletcher's anecdotal experiences in how he and his friends deal with unacceptable food is beyond the knowledge of an average person.  Quite simply, Atty. Fletcher's opinions on this point are based not on any specialized knowledge or training – they are based on his life experiences consuming food.

Outside of Atty. Fletcher's legal analysis, there is nothing in his report that exceeds the knowledge of an average juror. With regard to his legal analysis, it is not the proper subject of expert testimony. Thus, no portion of Atty. Fletcher's report is proper, it should be stricken in its entirety and he should be precluded from testifying at trial.

        Respectfully submitted,

        KNOX MCLAUGHLIN GORNALL &
        SENNETT, P.C.

        BY: */s/Richard A. Lanzillo*
            Richard A. Lanzillo, Esq.
            Neal R. Devlin, Esq.
            120 West Tenth Street
            Erie, Pennsylvania 16501
            (814) 459-2800

            Attorneys for Plaintiff/Counterclaim Defendant, International Market Brands and Third-Party Defendants, C.A. Curtze, Inc., Jacobstein Food Service, Inc., and Northern Frozen Foods, Inc. d/b/a Northern Haserot

# 903494.v1