UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL MARKET BRANDS, )<br><br>Plaintiff and )<br>Counterclaim Defendant, )<br><br>v. )<br><br>MARTIN INTERNATIONAL )<br>CORPORATION, )<br><br>Defendant and )<br>Counterclaim Plaintiff. )<br>_____ )<br><br>MARTIN INTERNATIONAL )<br>CORPORATION, )<br><br>Third-Party Plaintiff, )<br><br>v. )<br><br>C.A. CURTZE, INC., )<br>JACOBSTEIN FOOD SERVICE, INC., and )<br>NORTHERN FROZEN FOODS, INC. d/b/a )<br>NORTHERN HASEROT, )<br><br>Third-Party Defendants. )<br>_____ ) | CIVIL ACTION NO:  1:09-cv-00081 ERIE<br>Judge Maurice B. Cohill<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**MARTIN INTERNATIONAL CORPORATION'S MEMORANDUM IN OPPOSITION
TO MOTION TO STRIKE EXPERT REPORT OF ANTHONY L. FLETCHER**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

ARGUMENT ..............................................................................................................3

I.      COURTS ROUTINELY ALLOW TRADEMARK ATTORNEYS TO
        PROVIDE EXPERT TESTIMONY CONCERNING THE FACTORS
        RELEVANT TO DETERMINING "LIKELIHOOD OF CONFUSION"
        IN TRADEMARK CASES.....................................................................................3

II.     MR. FLETCHER'S EXPERT REPORT AND TESTIMONY SATISFIES
        THE STANDARD FOR ADMISSIBILITY UNDER FEDERAL
        RULE OF EVIDENCE 702 ...................................................................................7

        A.      Mr. Fletcher is Qualified to Testify as an Expert Witness...........................8

        B.      Mr. Fletcher's Expert Opinions are Reliable ...............................................8

                1.      Mr. Fletcher's opinions are based on his review and analysis
                        of sufficient facts in the case...........................................................9

                2.      Mr. Fletcher's opinions are the product of sound principles
                        and methodology – the touchstone of reliability.............................10

III.    MR. FLETCHER'S EXPERT OPINIONS WILL NOT USURP THE
        ROLE OF THE COURT OR JURY .....................................................................14

CONCLUSION.........................................................................................................19

## TABLE OF AUTHORITIES

### Cases

A&H Sportswear v. Victoria's Secret Stores, Inc.,
  237 F.3d 198 (3d Cir. 2000)................................................................3

Bausch & Lomb, Inc. v. Alcon Labs., Inc.,
  79 F. Supp. 2d 252 (W.D.N.Y. 2000) .................................................18, 19

Best Buy Warehouse v. Best Buy Co.,
  751 F. Supp. 824 (W.D. Mo. 1989) ...........................................................6

C.P. Interests, Inc. v. California Pools, Inc.,
  238 F.3d 690 (5th Cir. 2001) ..................................................................4

Chamberlain Group v. Interlogix, Inc.,
  2002 U.S. Dist. LEXIS 6998 (N.D. Ill. Apr. 18, 2002) ...............................18

Fiataruolo v. United States,
  8 F.3d 930 (2d Cir. 1993).................................................................15, 18

Freedom Card, Inc. v. JP Morgan Chase & Co.,
  432 F.3d 463 (3d Cir. 2005).............................................................3, 4, 17

Georgia-Pacific Corp. v. United States Plywood Corp.,
  318 F. Supp. 1116 (S.D.N.Y 1970)..........................................................16

Green v. Fornario,
  486 F.3d 100 (3d Cir. 2007) ...................................................................3

Hangarter v. Provident Life & Accident Ins. Co.,
  373 F.3d 998 (9th Cir. 2004) .................................................................15

Holbrook v. Lykes Bros. S.S. Co.,
  80 F.3d 777 (3d Cir. 1996) .................................................................7, 8, 9

i4i Ltd. P'ship v. Microsoft Corp.,
  598 F.3d 831 (Fed. Cir. 2010)................................................................16

In re Paoli R.R. Yard Litig,
  35 F.3d 717 (3d Cir. 1994)...................................................................8, 9

Interpace Corp. v. Lapp, Inc.,
  721 F.2d 460 (3d Cir. 1983)...................................................................4

Jones v. Ind. Area Sch. Dist.,
    2006 U.S. Dist. LEXIS 97270 (W.D. Pa. Feb. 6, 2006) ........................................15, 17

Kannankeril v. Terminix Int'l, Inc.,
    128 F.3d 802 (3d Cir. 1997)........................................................................7, 8, 9

Kraft General Foods v. BC-USA,
    840 F. Supp. 344 (E.D. Pa. 1993) ......................................................................5

KSR Int'l Co. v. Teleflex, Inc.,
    550 U.S. 398 (2007)........................................................................................16

Larsen v. Ortega,
    816 F. Supp. 97 (D. Conn. 1992) ......................................................................6

Locomotor USA, Inc. v. Korus Co.,
    1993 U.S. Dist. LEXIS 19609 (C.D. Cal. Mar. 15, 1993) ............................6

MCC Mgmt. of Naples, Inc. v. International Bancshares Corp.,
    2010 U.S. Dist. LEXIS 10834 (W.D. Okla. Feb. 8, 2010) ..........................17

Micro Chem., Inc. v. Lextron, Inc.,
    317 F.3d 1387 (Fed. Cir. 2003)........................................................................16

Olympia Group, Inc. v. Cooper Indus., Inc.,
    2003 U.S. Dist. LEXIS 27857 (E.D.N.C. Apr. 12, 2003) ........................3, 5

Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.,
    1994 U.S. Dist. LEXIS 13725 (N.D. Ill. Sept. 27, 1994) ..........................3, 6

Sands, Taylor & Wood Co. v. Quaker Oats Co.,
    1993 U.S. Dist. LEXIS 7893 (N.D. Ill. June 7, 1993) ................................16

Sterling Acceptance Corp. v. Tommark, Inc.,
    227 F. Supp. 2d 454 (D. Md. 2002) ..................................................................6

United States v. Milton,
    555 F.2d 1198 (5th Cir. 1977) ........................................................................15

United States v. McDade,
    1995 U.S. Dist. LEXIS 11640 (E.D. Pa. Aug. 4, 1995)........................15, 17

United States v. Velasquez,
    64 F.3d 844 (3d Cir. 1995) ..........................................................................7, 8

Vail Assocs., Inc. v. Vend-Tel-Co.,
     516 F.3d 853 (10th Cir. 2008) ...............................................................3, 4, 6

**Rules**

Federal Rule of Evidence 702 ...........................................................2, 5, 7, 8, 9
Federal Rule of Evidence 704 ...................................................................7, 17

**Other**

William J. Brewer, Expert Witness Testimony In Legal Malpractice Cases,
     45 S.C. L. Rev. 727 (1994) ...........................................................................17

Defendant, Counterclaim Plaintiff and Third-Party Plaintiff Martin International Corporation ("Martin") submits this memorandum in opposition to the Motion to Strike the Expert Report of Anthony L. Fletcher filed by Plaintiff and Counterclaim Defendant International Market Brands ("IMB") and Third-Party Defendants C.A. Curtze, Inc. ("Curtze"), Jacobstein Food Service, Inc. ("Jacobstein"), and Northern Frozen Foods, Inc. d/b/a Northern Haserot ("Haserot") (collectively, the "IMB Defendants").

## INTRODUCTION

The Court should deny the IMB Defendants' Motion to Strike the Expert Report of Anthony L. Fletcher in its entirety. Mr. Fletcher is an attorney, who has practiced trademark law for over 40 years. He is an acknowledged expert in the field of trademarks, having prosecuted trademark applications before the United States Patent and Trademark Office, conducted trademark searches, litigated trademark cases, and rendered opinions clearing or not clearing trademarks for registration and use in the United States, largely by considering "likelihood of confusion" between proposed marks and existing marks. He also has written articles, given speeches, and taught classes on trademark law. In his Expert Report, Mr. Fletcher opined on each of the Third Circuit's "Lapp factors," which are the subsidiary factors that a trier of fact may consider in determining whether the IMB Defendants' use of the trademark BLACK PEARL for pork is likely to cause confusion with Martin's BLACK PEARL branded seafood.[1]

Courts routinely admit expert testimony by trademark attorneys, like Mr. Fletcher, concerning the likelihood of confusion factors in trademark actions, including the similarity between the plaintiff's and defendant's marks, the strength of the plaintiff's mark, the intent of the defendant in adopting the accused mark, the sophistication of consumers, the relatedness of the plaintiff's and defendant's products or services, and the geographic remoteness of the

---

[1] Mr. Fletcher's Expert Report is attached as Exhibit 1.

1

plaintiff's and defendant's markets.  Not only did the IMB Defendants ignore all of these cases in their Motion, but they also failed to cite a single case in which a court precluded expert testimony by a trademark attorney on subsidiary factors used to analyze likelihood of confusion.

Mr. Fletcher's expert testimony satisfies the liberal standard of admissibility in Federal Rule of Evidence 702.  His qualifications are undisputed.  He possesses specialized knowledge as a trademark attorney that will assist the trier of fact to determine a fact in issue – whether the IMB Defendants' use of BLACK PEARL as a trademark is likely to cause confusion as to source, sponsorship, or association with Martin.  Mr. Fletcher's expert opinions are reliable because they are based on his review and analysis of the evidence in the case, and they are the product of sound principles and methodology.

Finally, contrary to the IMB Defendants' argument, Mr. Fletcher's opinions will not usurp the role of the Court or the jury.  Mr. Fletcher's opinions are not bald, unadorned statements of the law.  Rather, as set forth in his Expert Report, he opined on various Lapp factors that are relevant to the jury's determination of likelihood of confusion, which is a *question of fact* in the Third Circuit.  Some of Mr. Fletcher's opinions are informed by certain legal standards, but there is nothing improper about this and, in fact, this is common for experts in intellectual property cases and other types of litigation.  Mr. Fletcher also will not usurp the role of the jury.  In his Expert Report, Mr. Fletcher did not opine that there is a likelihood of confusion in this case (although courts have allowed such testimony).  Instead, he opined on subsidiary factors that the jury may consider in deciding whether there is a likelihood of confusion.  Because Mr. Fletcher explicitly set forth the facts and reasoning on which he relied, the jury can independently evaluate his conclusions.

## ARGUMENT

**I.    COURTS ROUTINELY ALLOW TRADEMARK ATTORNEYS TO PROVIDE EXPERT TESTIMONY CONCERNING THE FACTORS RELEVANT TO DETERMINING "LIKELIHOOD OF CONFUSION" IN TRADEMARK CASES**

It is well-established that "attorneys are regularly admitted to provide expert testimony in trademark cases." Olympia Group, Inc. v. Cooper Indus., Inc., 2003 U.S. Dist. LEXIS 27857, at *2-3 (E.D.N.C. Apr. 12, 2003) (denying motion to exclude trademark attorney from testifying as an expert witness); see also Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc., 1994 U.S. Dist. LEXIS 13725, at *8 (N.D. Ill. Sept. 27, 1994) ("courts generally have admitted expert testimony from intellectual property lawyers in trademark cases.").  The fact that courts routinely allow trademark attorneys to testify as experts in trademark cases holds particularly true where, as here, the expert opines on the factors relevant to determining "likelihood of confusion."[2] See, e.g., Vail Assocs., Inc. v. Vend-Tel-Co., 516 F.3d 853, 861-63 (10th Cir. 2008) (affirming district court's decision in bench trial and reliance on testimony of defendant's expert, a trademark attorney, concerning the likelihood of confusion factors in the Tenth Circuit).

That a trademark attorney may testify about the factors underlying the trier of fact's determination of whether the defendant's use of a particular mark is likely to cause confusion with the plaintiff makes sense because likelihood of confusion is a *question of fact*.  Green v. Fornario, 486 F.3d 100, 106 (3d Cir. 2007) ("likelihood of confusion is a factual issue"); A&H Sportswear v. Victoria's Secret Stores, Inc., 237 F.3d 198, 207 (3d Cir. 2000) (same).  In the

---

[2] In order to establish trademark infringement, the plaintiff must show that "the defendant's use of the mark is likely to create confusion" concerning the source, sponsorship, or association of the defendant's goods or services with the plaintiff's goods or services.  Freedom Card, Inc. v. JP Morgan Chase & Co., 432 F.3d 463, 470 (3d Cir. 2005).  "A likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Id.

3

Third Circuit, this issue of fact is resolved by examining the evidence in view of the "Lapp factors" to determine whether there is a likelihood of confusion.[3]

In his Expert Report, Mr. Fletcher opined on "each of the Lapp factors used by the United States Court of Appeals for the Third Circuit to determine whether there is a likelihood of confusion in trademark cases." Ex. 1 – Expert Report at 5-6. These opinions are based on the facts in the case and his knowledge and experience as a trademark attorney. As set forth below, trademark attorneys may provide expert testimony in trademark actions concerning the factors relevant to determining likelihood of confusion, just like Mr. Fletcher did here.

For example, in Vail Associates v. Vend-Tel-Co., the Tenth Circuit affirmed the district court's decision for the defendant on a trademark claim following a bench trial. 516 F.3d at 863. In so doing, the Tenth Circuit relied heavily on the testimony of the defendant's expert, a trademark attorney, regarding several likelihood of confusion factors, including: (1) the strength of plaintiff's mark; (2) the similarity between the plaintiff's mark and the defendant's mark; (3) the intent of the defendant in adopting the accused mark; (4) the similarity of the parties' services and manner in which they market them; and (5) the sophistication of consumers of the defendant's service. Id. at 861–63, 867-71.

Similarly, in C.P. Interests, Inc. v. California Pools, Inc., the district court admitted expert testimony by a trademark attorney for the plaintiff concerning its succession and ownership of trademark rights, geographic remoteness of the plaintiff's and defendant's market, and the

---

[3] The "Lapp factors" are: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand in the same market." Freedom Card, 432 F.3d at 471 (quoting Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983)).

plaintiff's use of the mark in the Houston area.  238 F.3d 690, 696–99 (5th Cir. 2001).  On

appeal, the defendant argued, similar to the IMB Defendants in this case, that the trademark

attorney "improperly offered legal conclusions in his testimony on the application of trademark

law to this case."  Id. at 697.  The Fifth Circuit affirmed the district court's admission and

reliance on the attorney's expert testimony.  Id. at 697-99.

     In Kraft General Foods v. BC-USA, the defendant presented expert testimony of an

intellectual property agent, who specialized in trademark law and drafted trademark opinions in

Argentina.  840 F. Supp. 344, 346–47 (E.D. Pa. 1993).  The agent opined on the similarity

between the parties' marks and the "longstanding reputation" of the defendant's marks, and he

concluded that "in his opinion, the two marks are not confusingly similar, that Argentine

consumers will not be confused, and that a lawsuit by Kraft against Santa Rosa in Argentine

would likely fail."  Id.  The Eastern District of Pennsylvania allowed the expert's testimony.

     The district court reached a similar conclusion in Olympia Group, Inc. v. Cooper

Industries, Inc., 2003 U.S. Dist. LEXIS 27857 (E.D.N.C. Apr. 12, 2003), where it denied the

plaintiff's motion to exclude the expert report and testimony of a trademark attorney on behalf of

the defendant.  The plaintiff argued that the trademark attorney's expert report was "a continuous

legal argument" – the same argument made by the IMB Defendants here.  Id. at *1.  The district

court held that the expert report and testimony were admissible under Rule 702, stating:

> Despite Plaintiff's argument that it is inappropriate for Blynn, an attorney experienced in trademark law, to testify as an expert, *attorneys are regularly admitted to provide expert testimony in trademark cases* . . . .  The Court has reviewed the report and finds that Blynn [the trademark expert witness] displays specialized knowledge that may be helpful to the trier of fact and is within the scope of evidence contemplated under Fed. Rule of Evidence 702.

Id. at *2–3 (emphasis added).

In addition to Vail Associates, C.P. Interests, Kraft General Foods, and Olympia Group, numerous other courts have allowed trademark attorneys to testify as experts in trademark cases, including on the likelihood of confusion factors. See Sterling Acceptance Corp. v. Tommark, Inc., 227 F. Supp. 2d 454, 462 n.5 (D. Md. 2002) (granting summary judgment for defendant based, in part, on expert report of a "patent and trademark attorney who has testified as an expert witness in many patent and trademark cases" – the attorney opined that plaintiff's and defendant's marks were *dissimilar* and "create[d] clearly different audible, visual and commercial impressions"); Sam's Wines & Liquors, 1994 U.S. Dist. LEXIS 13725, at *22-28 & n.3 (denying motion to exclude expert testimony by trademark attorney and allowing testimony "about the technical aspects of applying for and obtaining a federal trademark registration and . . . the similarities of the parties' respective marks based on her experience as a practicing trademark attorney," as well as other topics); Locomotor USA, Inc. v. Korus Co., 1993 U.S. Dist. LEXIS 19609, at *3 (C.D. Cal. Mar. 15, 1993) (relying on trademark attorney's expert testimony as to similarity of marks and likelihood of confusion), aff'd as to trademark claim, 1995 U.S. App. LEXIS 401, 412–14 (9th Cir. 1995); Larsen v. Ortega, 816 F. Supp. 97, 105 & n.11 (D. Conn. 1992) (allowing expert testimony of trademark attorney: "The Court has no reservations about Attorney DeLio testifying as an expert . . . . *There is little doubt that expert testimony on the strength of a plaintiff's trademark or on the degree of similarity within a discreet industry is appropriate*") (emphasis added), aff'd, 990 F.2d 623 (2d Cir. 1993); Best Buy Warehouse v. Best Buy Co., 751 F. Supp. 824, 825–26 (W.D. Mo. 1989) (relying on expert testimony of trademark attorney as to protectability of plaintiff's mark), aff'd, 920 F.2d 536 (8th Cir. 1990).

As set forth above, it is well-accepted that trademark attorneys may provide expert opinions concerning factors relevant to the determination of likelihood of confusion in a trademark action.  This is precisely what Mr. Fletcher did in his Expert Report.

## II. MR. FLETCHER'S EXPERT REPORT AND TESTIMONY SATISFIES THE STANDARD FOR ADMISSIBILITY UNDER FEDERAL RULE OF EVIDENCE 702

"The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact." Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 780 (3d Cir. 1996) (internal quotes and citation omitted).  "Rule 702, which governs the admissibility of expert testimony, specifically embraces this policy" and "has a liberal policy of admissibility." Id. (quoting United States v. Velasquez, 64 F.3d 844, 849 (3d Cir. 1995) and citing In re Paoli R.R. Yard Litig, 35 F.3d 717, 741 (3d Cir. 1994)); see also Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997).  Rule 702 provides the following standard for the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skills, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles or methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Federal Rule of Evidence 704(a) further provides that opinion testimony "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Mr. Fletcher's expert testimony, as set forth in his Expert Report, satisfies the standard for admissibility under Rule 702.  First, Mr. Fletcher is an undisputed expert with specialized knowledge, experience, and training as an attorney practicing trademark law for over 40 years. Second, his opinions are reliable – that is, they are based on his review of the facts in this case

and the product of the application of reliable principles and knowledge acquired as a trademark attorney.  <u>Third</u>, his expert opinions will assist the trier of fact to determine a fact in issue: whether the IMB Defendants' use of BLACK PEARL as a trademark is likely to cause confusion with Martin's BLACK PEARL trademark, which is a question of fact.  Accordingly, Mr. Fletcher's expert opinions are admissible.

### A.  Mr. Fletcher is Qualified to Testify as an Expert Witness

Mr. Fletcher is qualified by "knowledge, skills, experience, training, and education" to testify as an expert witness on trademark issues.  Rule 702's requirement that the proposed witness be an expert has been "liberally construed" by the Third Circuit.  <u>Holbrook</u>, 80 F.3d at 781 (quoting <u>Velasquez</u>, 64 F.3d at 849).  Mr. Fletcher has practiced trademark law for 40 years and is a leader in the field.  <u>See</u> Ex. 1 – Expert Report at 2-5.  He has prosecuted trademarks before the U.S. Patent and Trademark Office, conducted trademark searches, litigated trademark cases, and rendered opinions clearing or not clearing trademarks for registration and use in the United States, largely by considering likelihood of confusion between proposed marks and existing marks.  <u>See id.</u> at 3.  Mr. Fletcher also has written articles, given speeches, and taught classes on trademark law.  <u>See id.</u> at 3-5.  He also has achieved numerous professional honors. <u>See id.</u> at 4.  In addition, he has served as an expert consultant or witness in trademark cases on three prior occasions and currently serves as an expert witness in a trademark action in the Eastern District of Arkansas.  <u>See id.</u> at 5.  The IMB Defendants do not and cannot contest Mr. Fletcher's qualifications.

### B.  Mr. Fletcher's Expert Opinions are Reliable

To be considered reliable, Mr. Fletcher's opinions must be based on sufficient facts and must be the product of reliable principles or methods.  <u>See</u> Fed. R. Evid. 702.  The standard for determining reliability "is not that high."  <u>In re Paoli R.R. Yard Litig</u>, 35 F.3d at 745; <u>see also</u>

Holbrook, 80 F.3d at 784 ("The reliability requirement...should not be applied too strictly.").

The test is whether the "particular opinion is based on valid reasoning and reliable

methodology." Kannankeril, 128 F.3d at 806.  The admissibility inquiry thus focuses on

principles and methodology, *not on the conclusions generated by the principles and*

*methodology.*  Id.  If the methodology and reasoning are sufficiently reliable to allow the fact

finder to consider the expert's opinion, it is left to the trier of fact to assess the expert's

conclusions:

> [Plaintiffs do not] have to prove their case twice – *they do not have to*
> *demonstrate to the judge by a preponderance of the evidence that the assessments*
> *of their experts are correct, they only have to demonstrate by a preponderance of*
> *evidence that their opinions are reliable* . . . . the evidentiary requirement of
> reliability is lower than the merits standard of correctness.

In re Paoli R.R. Yard Litig., 35 F.3d at 745 (emphasis added).

Mr. Fletcher's opinions set forth in his Expert Report clearly meet the reliability standard

under Rule 702 because (1) they are based on his review and analysis of sufficient facts in this

case, and (2) they are the product of sound methodology.

### 1.    Mr. Fletcher's opinions are based on his review and analysis of sufficient facts in the case

Mr. Fletcher's opinions are based on his review and analysis of sufficient facts in the

case.  In this regard, he reviewed and considered the evidence set forth in Martin's Statement of

Material Facts in support of its Motion for Summary Judgment[4] and certain exhibits in support

thereof, the pleadings in the case and attached exhibits including IMB's Complaint and Martin's

Counterclaims, the mediation statements and accompanying exhibits submitted by Martin and

the IMB Defendants, Martin's interrogatory responses, and various other exhibits and discovery

responses.  See Ex. 1 – Expert Report at 8 and Exs. 1 and 2 attached thereto.

---

[4] Mr. Fletcher's Expert Report incorporates by reference and attaches Martin's Statement of Material Facts as
Exhibit 1.

2.    **Mr. Fletcher's opinions are the product of sound principles and methodology – the touchstone of reliability**

Mr. Fletcher's opinions concern the factors that the jury may consider in deciding whether there is a likelihood of confusion. His opinions are based on sound principles and methodology, which is the touchstone of reliability. For example:

Similarity of the Marks

Mr. Fletcher opined that the degree of similarity between Martin's BLACK PEARL trademark and the IMB Defendants' BLACK PEARL trademark is "total." See Ex. 1 – Expert Report at 11. This opinion was based on his comparison of Martin's registrations for BLACK PEARL and the IMB Defendants' BLACK PEARL mark. Id. (opining that the literal portion of Martin's mark is identical to that of IMB); see also id. at 9-11 (discussing Martin's BLACK PEARL registrations). This methodology is sound and well-accepted.

Strength of the Owner's Mark

Mr. Fletcher opined as to the inherent strength and acquired strength of Martin's BLACK PEARL mark. As to inherent strength, Mr. Fletcher opined that Martin's BLACK PEARL mark for seafood 'is at least suggestive, and, to someone ignorant of the origin of pearls, probably arbitrary. In either event, BLACK PEARL is inherently distinctive for seafood." Id. at 13. In reaching this opinion, Mr. Fletcher first described the manner in which trademark lawyers categorize marks "on a five step ascending scale" as generic, descriptive, suggestive, arbitrary, and fanciful. Id. at 12-13. After describing this categorization system, which he has applied hundreds of times in his career, Mr. Fletcher categorized Martin's BLACK PEARL mark for seafood as at least a suggestive mark, and maybe an arbitrary mark, but in either event inherently distinctive. Id. His methodology to analyze inherent strength is sound and well-accepted.

As to acquired strength, Mr. Fletcher opined that Martin's BLACK PEARL mark has "marketplace strength [that] appears to be sufficient to maintain its ultimate consumers' awareness of, and respect and desire for, the brand." Id. at 14. Mr. Fletcher based this opinion on his review of relevant facts such as Martin's sales of BLACK PEARL seafood, money spent on advertising by Martin, advertising to consumers by Martin, advertising by markets and restaurants, and unsolicited e-mails from customers received by Martin referring to its "BLACK PEARL" seafood. Id. Once again, this methodology of determining acquired strength is sound and well-accepted.

Intent of the Defendant in Adopting the Mark

Mr. Fletcher opined on the intent of the IMB Defendants' in adopting their BLACK PEARL mark for pork. Id. at 17-18. He first noted that direct evidence of bad intent is rare:

> Usually, intent is a matter of inference. I have seen (and inflicted) considerable deposition questioning directed to the subject, and only once seen a (probably inadvertent) *mea culpa* so bad it could not be retracted. Direct evidence of bad intent is rare.

This opinion is proper because it is based on Mr. Fletcher's knowledge and experience as a trademark practitioner.

Mr. Fletcher further opined that the IMB Defendants were "incredibly reckless, perhaps even willful." Mr. Fletcher based this opinion on his review of the facts concerning the IMB Defendants' adoption of their BLACK PEARL mark and his substantial experience in clearing trademarks for registration and use by clients:

> Third-Party Defendants Curtze, Jacobstein and Haserot, who are subject to common ownership and control with IMB, are food distributors who were well aware of the BLACK PEARL seafood trademarks, because they had bought and sold Martin's BLACK PEARL seafood before they began selling BLACK PEARL pork. Curtze, Jacobstein and Haserot sold BLACK PEARL seafood and BLACK PEARL pork to several of the same restaurant customers.

11

> The IMB Defendants evidently did not perform any trademark search before selecting BLACK PEARL as their brand name for pork products; indeed, they apparently did not even canvas their corporate group for knowledge of BLACK PEARL as a food brand . . . . My professional opinion is that if they did not make enough inquiries to discover BLACK PEARL seafood, they were incredibly reckless. On the other hand, if they were aware of the BLACK PEARL seafood brand and went ahead anyway, they were incredibly reckless, perhaps even willful. These opinions are based on my experience in clearing (and not clearing) trademarks for registration and/or use by clients for nearly forty years, and I have conferred with enough other counsel in the course of these clearances to know that I am by no means unduly cautious in my analysis.

Id. at 18. There can be no dispute that this opinion is based on sound principles and methodology.

Evidence of Actual Confusion

Mr. Fletcher noted that there is no evidence of actual confusion, but that in his opinion, this factor is entitled to "very little, if any, weight" in this case. Id. at 16, 19. Mr. Fletcher's opinion was based on his experience as a trademark attorney that reliable evidence of actual confusion is difficult to secure, particularly at the retail level. Id. at 19. In addition, it is based on his experience as an attorney in dealing with foods:

> Evidence of actual confusion, in my experience, normally arises when a confused person's reaction is recorded or reported – by a communication to the believed manufacturer seeking repair of or refund for someone's regrettable purchase from the accused infringer. Short of lawsuits for alleged food poisoning, I have not heard of this for food products.

Id. at 16. Once again, Mr. Fletcher's methodology is sound. It is entirely appropriate for him to base an opinion on his knowledge and experience as a trademark lawyer for four decades.

Similarity of Channels of Trade, Advertising, and Target of Sales Efforts

Mr. Fletcher opined that Martin's BLACK PEARL seafood and the IMB Defendants' BLACK PEARL pork are sold through the same channels of trade:

> BLACK PEARL seafood and BLACK PEARL pork move through exactly the same distribution channels to markets and restaurants – in some cases the same markets and restaurants – where they are bought by food shoppers and diners.

Id. at 19.  This opinion was based on Mr. Fletcher's analysis of the evidence set forth in Martin's Statement of Material Facts, in particular paragraphs 3, 15-22, 24-25, 31-36, 44-47, and 49-51, which described the channels of trade used by the parties.  Id.  Mr. Fletcher applied a reliable and well-accepted methodology.

Similarly, Mr. Fletcher compared the evidence concerning Martin's and the IMB Defendants' packaging and promotion of their respective BLACK PEARL branded products, as well as the targets of their sales efforts, and concluded that the similarity of promotion and customers weighs in favor of a likelihood of confusion in this case.  Id. at 19-20.  In doing so, Mr. Fletcher noted that "several of the same customers have purchased both BLACK PEARL branded seafood and BLACK PEARL branded pork."  Id. at 19.  Once again, Mr. Fletcher's methodology is reliable and well-accepted.

Other Facts Suggesting that the Consuming Public Might Expect the Prior Owner to Manufacture a Product in the Defendant's Market

Mr. Fletcher opined that there are other facts suggesting that the consuming public might expect that BLACK PERAL pork comes from the same source as BLACK PEARL seafood: "the starting point for BLACK PEARL is seafood, and it would not be surprising for customers familiar with the brand to assume that BLACK PEARL pork comes from same source."  Id. at 22.  Mr. Fletcher based this opinion on his review of the evidence showing "that numerous food distributors and processors market seafood and other meats, including pork in some cases, under the same mark."  Id. (citing to evidence that 31 different food processors and distributors own 63 trademarks registered in the PTO that cover both seafood and other meat products).  Mr. Fletcher also based this opinion on his experience as an attorney that "the public is accustomed to seeing brand owners leverage the strength of a single product brand into other, related areas."  Id. at 22-

13

23 (noting as examples: GILLETTE, FIBER ONE, CREST, DISNEY, and THOMAS'). Mr. Fletcher's opinion is based on sound methodology and principles.

In sum, Mr. Fletcher's expert opinions, as set forth in his Expert Report, clearly satisfy Rule 702's standard of reliability. Moreover, his opinions are consistent with numerous other cases that allowed trademark attorneys to testify as expert witnesses regarding particular factors relevant to a determination of likelihood of confusion, as described above in Section I. Not surprisingly, the IMB Defendants do not like these opinions. But if an expert's methodology and reasoning are sufficiently reliable, it is left to the trier of fact to assess the expert's conclusions. The trier of fact is perfectly capable of doing that in this case.

## III.   MR. FLETCHER'S EXPERT OPINIONS WILL NOT USURP THE ROLE OF THE COURT OR JURY

The IMB Defendants' main contention is that Mr. Fletcher's expert opinions are "a transparent attempt to supplant the role of Judge and Jury in this matter." IMB Defendants' Br. at 2. The IMB Defendants first argue that "it is not for witnesses to instruct the trier of fact as to applicable principles of law – it is for the judge." Id. Martin agrees with this unremarkable statement. However, Mr. Fletcher *will not* instruct the jury on the law. Rather, as set forth in his Expert Report, he opined on various Lapp factors that are relevant to the jury's determination of likelihood of confusion, which is a *question of fact* in the Third Circuit and other jurisdictions. Mr. Fletcher's expert opinions are based on his review of the facts in the case and his knowledge and experience. They are not bald, unadorned assertions of the law.

Some of Mr. Fletcher's expert opinions are informed by certain legal principles. For example, in assessing the strength of Martin's BLACK PEARL mark, Mr. Fletcher first described how trademark attorneys classify marks as "fanciful," "arbitrary," "suggestive," "descriptive," and "generic." He then opined that Martin's BLACK PEARL mark for seafood is

14

at least suggestive, if not arbitrary, and thus constitutes an inherently distinctive mark.  Mr.

Fletcher's opinion necessarily was informed by legal principles concerning the classification of

marks.

There is nothing improper about this.  Experts often opine on questions of fact and law

with reference to a prevailing legal standard.  For example, in <u>Fiataruolo v. United States</u>, 8 F.3d

930 (2d Cir. 1993), the Second Circuit allowed an expert to testify about whether the defendant

was a "responsible person," as defined in 26 U.S.C. § 6672.  The court explained its decision as

follows:

> [The expert, Cohen] offered his opinion . . . as to whether Fiataruolo was responsible
> under § 6672.  Cohen's testimony gave the jury helpful information beyond a simple
> statement on how its verdict should read.  He couched his opinion specifically "on the
> evidence that I looked at and the work that I did."  Thus . . . Cohen's opinion was not a
> simple bold assertion of the law and was not designed to invade the province of the trial
> court.

<u>Id.</u> at 842.

This Court similarly has recognized that an expert's opinion may be informed by legal

standards or principles in certain types of cases.  <u>Jones v. Ind. Area Sch. Dist.</u>, 2006 U.S. Dist.

LEXIS 97270, at *4 (W.D. Pa. Feb. 6, 2006) (admitting expert testimony referencing legal

standards in sexual harassment cases); <u>see also</u> <u>United States v. Milton</u>, 555 F.2d 1198, 1204 (5th

Cir. 1977) (affirming admission of expert testimony that defendant conducted an illegal

"gambling business" under 18 U.S.C. § 1955, where expert correctly stated the law and court

instructed jury not to give expert testimony undue deference); <u>United States v. McDade</u>, 1995

U.S. Dist. LEXIS 11640, at *9 (E.D. Pa. Aug. 4, 1995) (permitting expert to testify as to legal

duty under Ethics in Government Act); <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373

F.3d 998, 1017 (9th Cir. 2004) (affirming trial court's admission of expert testimony on state

insurance law: "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.").

Experts commonly offer opinions that are informed by legal principles in intellectual property cases. Trademark infringement cases are one example. See, supra, Section I (describing cases allowing trademark attorneys to testify in trademark actions). Patent cases are another example. An expert who opines that a patent is obvious under 35 U.S.C. § 103 must do so with reference to the governing legal standard – i.e., the expert must set forth his or her understanding of the law of obviousness and render an opinion based on the facts as informed by these legal principles. KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 426-27 (2007) (even though the "ultimate judgment of obviousness is a legal determination," "[i]n considering summary judgment on that question the district court can and should take into account expert testimony").

Similarly, experts opining on "reasonable royalty" damages in a patent case commonly apply the "Georgia-Pacific factors," which – similar to the Lapp factors in a trademark case – are a list of subsidiary factors to evaluate reasonable royalty damages established in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1119-20 (S.D.N.Y 1970):

> On appeal, Microsoft ably points out various weaknesses in the damage calculations by i4i's expert. At their heart, however, Microsoft's disagreements are with Wagner's conclusions, not his methodology. Daubert and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness. We have consistently upheld experts' use of a hypothetical negotiation and Georgia-Pacific factors for estimating a reasonable royalty.

i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 854 (Fed. Cir. 2010) (holding that trial court did not abuse its discretion in admitting expert testimony on reasonable royalty damages) (citing Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1393 (Fed. Cir. 2003)); see also Sands, Taylor & Wood Co. v. Quaker Oats Co., 1993 U.S. Dist. LEXIS 7893, at *13 (N.D. Ill. June 7, 1993) (applying Georgia-Pacific factors to determine reasonable royalty damages for trademark

infringement, and basing damage award in part on expert testimony), <u>rev'd & remanded on other grounds</u>, 34 F.3d 1340 (7th Cir. 1994).[5]

The IMB Defendants' related contention that Mr. Fletcher will usurp the role of the trier of fact also is misplaced. Mr. Fletcher is not "telling the jury how to rule." Indeed, in his Expert Report, he did not even opine that there is a likelihood of confusion in this case (although courts have admitted such testimony). Instead, he opined on subsidiary factors that the jury may consider in deciding whether there is a likelihood of confusion. Mr. Fletcher's opinions are not unadorned legal conclusions; they are the product of a rigorous analysis of the evidence in this case.

Because Mr. Fletcher explicitly set forth the reasoning and facts on which he relied, the jury can independently evaluate his conclusions – it is free to accept or reject them. As this Court stated in <u>Jones</u>:

> Under Rule 704(a), an expert's testimony is not objectionable merely because 'it embraces an ultimate issue to be decided by the trier of fact.' Although unadorned legal conclusions are impermissible, *an expert may draw certain legal conclusions as long as he sets forth explicitly the facts upon which he relied to reach his conclusion in order to enable the jury to evaluate independently his conclusion.*

---

[5] Legal malpractice actions are another example where an expert witness, commonly an attorney with expertise in legal ethics or a given area of law, may opine as to whether the attorney accused of malpractice failed to comply with governing legal standards. "The general rule in legal malpractice cases is that expert testimony is ordinarily required to establish a prima facie case." Wilburn Brewer, Jr., <u>Expert Witness Testimony In Legal Malpractice Cases</u>, 45 S.C. L. Rev. 727, 733, 735 (1994) (citing cases and also noting that "[m]ost courts agree . . . that in the technical specialties--such as taxation, probate, patent, trademark, and admiralty law--expert testimony is almost always necessary to prove the standard of care and any breach."). Similarly, experts may opine as to issues of fact with reference to legal standards in other types of cases such as those involving alleged violations of the Occupational Health & Safety Act (OSHA) and the federal tax laws. <u>MCC Mgmt. of Naples, Inc. v. International Bancshares Corp.</u>, 2010 U.S. Dist. LEXIS 10834, at *10-11 (W.D. Okla. Feb. 8, 2010) (denying motion to exclude expert testimony by tax attorney in case involving propriety of tax benefits: "[Expert's] methods are reliable and would assist the trier of fact in understanding the interplay between the provisions of the Tax Code as they apply to financial institutions and the provisions of Assistance Agreements at issue in this case").

2006 U.S. Dist. LEXIS 97270, at *4; see also McDade, 1995 U.S. Dist. LEXIS 11640, at *9 ("an expert may draw certain legal conclusions so long as he sets forth the facts upon which he relied to reach his conclusion in order to enable the jury to evaluate independently his conclusion").

Finally, the IMB Defendants rely heavily on Bausch & Lomb, Inc. v. Alcon Labs., Inc., 79 F. Supp. 2d 252 (W.D.N.Y. 2000). See IMB Defendants' Br. at 2-3. However, that case actually weighs in favor of admitting Mr. Fletcher's expert testimony, not excluding it. As an initial matter, the Bausch & Lomb court allowed a patent attorney to opine on numerous matters, including the general procedures involved in the patent application process, the nature and purpose of interference and reexamination practice and procedure, that "the effective filing date of the '607 patent is the filing date of the '290 continuation-in-part application," "whether a claim limitation constitutes 'new matter' for purpose of [35 U.S.C.] § 120," and the definitions of technical terms. Id. at 255-58. The court precluded the expert from testifying regarding "what is required for a patent to be valid" and "about what constitutes a trade secret, misappropriation of a trade secret, and unfair competition under New York law." Id. at 257-59. Preclusion of this testimony was warranted because it constituted bald, unadorned statements of the law, which invaded the province of the court to instruct the jury on the law. As set forth above, Mr. Fletcher will not instruct the jury on the law, but instead will offer expert opinions on subsidiary factors that the jury may consider in deciding whether there is a likelihood of confusion. Bausch & Lomb is thus inapposite.[6]

---

[6] To the extent the Court is concerned about the jury placing undue weight on Mr. Fletcher's testimony, it can instruct the jury that the expert's views are not binding. See Fiataruolo, 8 F.3d at 942.

## CONCLUSION

For the foregoing reasons, Martin respectfully requests that the Court deny the IMB Defendants' motion to strike the expert report of Anthony L. Fletcher.[7]

MARTIN INTERNATIONAL CORPORATION

By its attorneys,

/s/ Eric D. Levin
Eric D. Levin (Admitted *Pro Hac Vice*)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Telephone:  (617) 345-9000
Facsimile:  (617) 345-9020

Edward W. Goebel, Jr. (PA Id No. 06636)
Matthew W. McCullough (PA Id No. 46950)
MacDonald Illig Jones & Britton, LLP
100 State Street, Suite 700
Erie, PA 16507
Telephone:  (814) 870-7602
Facsimile:  (814) 454-4647

Dated:  November 19, 2010

---

[7] In the event that the Court concludes that Mr. Fletcher may not testify concerning a particular Lapp factor, Martin respectfully requests that he be allowed to testify on all other Lapp factors not objectionable.  See Chamberlain Group v. Interlogix, Inc., 2002 U.S. Dist. LEXIS 6998, at *3 (N.D. Ill. Apr. 18, 2002) (denying motion to strike expert report in patent case where movant failed to identify specific portions of the report to be stricken: "Excluding all the testimony of a witness – rather than of a certain subject matter – is an extraordinary measure.") (quotations and citation omitted).

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2010, I served a copy of the foregoing document by overnight mail on counsel for International Market Brands, C.A. Curtze, Inc., Jacobstein Food Service, Inc, and Northern Haserot.

/s/ Eric D. Levin
Eric D. Levin