IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL MARKET BRANDS,<br><br>    Plaintiff and,<br>    Counterclaim Defendant,<br><br>v.<br><br>MARTIN INTERNATIONAL<br>CORPORATION,<br><br>    Defendants and<br>    Counterclaim Plaintiff.<br><br>MARTIN INTERNATIONAL<br>CORPORATION,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>C.A. CURTZE, INC.,<br>JACOBSTEIN FOOD SERVICE, INC., and<br>NORTHERN FROZEN FOODS, INC. d/b/a<br>NORTHERN HASEROT,<br><br>    Third-Party Defendants. | Civil Action No. 1:09-cv-00081 ERIE<br>Judge Maurice B. Cohill, Jr. |

**MEMORANDUM OPINION ON IMB DEFENDANTS' MOTION TO STRIKE THE EXPERT REPORT OF ANTHONY L. FLETCHER**

Plaintiff and Counterclaim Defendant International Market Brands ("IMB"), is the seller of pork products in the United States under the trademark of "BLACK PEARL." (Docket No. 1 at 2). Defendant and Counterclaim Plaintiff Martin International Corporation ("Martin") is the seller of seafood products under the trademark of "BLACK PEARL." (Docket No. 5 at 6). IMB has brought this action for declaratory judgment asking this Court to find that IMB's use of the mark BLACK PEARL does not amount to trademark infringement of Martin's marks or unfair

1

competition. Martin has filed a counterclaim against IMB for trademark infringement, false designation and representation of origin and unfair competition, and for a ruling that IMB's applications to register the BLACK PEARL mark are invalid.

Pending before this Court is the Motion to Strike the Expert Report of Anthony L. Fletcher, [ECF #68], filed by International Market Brands and Third-Party Defendants C.A. Curtze, Inc., Jacobstein Food Service, Inc., and Northern Frozen Foods, Inc. d/b/a Northern Haserot (collectively, the "IMB Defendants"). Martin wishes to use Anthony L. Fletcher ("Attorney Fletcher"), who is a trademark attorney, as an expert on the subject of likelihood of confusion in this trademark infringement action. For the foregoing reasons, we will grant the motion in part and deny the motion in part; sections 1, 3, 4, 5, 6, and 10 only are struck from the expert report.

## I. Discussion

The IMB Defendants' Motion to Strike is based upon the contention that Attorney Fletcher's testimony must be excluded pursuant to Federal Rule of Evidence 702 because: (1) the testimony opines on the legal standards applicable to this case and the ultimate issue of likelihood of confusion and (2) the testimony opines on common sense factual matters, and therefore, does not assist a trier of fact. (Docket No. 71 at 3). To the contrary, Martin contends that Attorney Fletcher's opinions relate to issues of fact, not legal standards, and that they will assist a trier of fact toward determining likelihood of confusion. (Docket No. 72 at 3-5).

The admissibility of an expert's opinion is governed by Federal Rule of Evidence 702, "Testimony by Experts," which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the

2

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Thus, as the United States Court of Appeals for the Third Circuit has held, "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Jackson v. City of Pittsburgh, 2010 WL 3222137, *8 (W.D. Pa. 2010) (quoting Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted)). In addition, expert testimony must assist the trier of fact. In re Paoli R.R. Yard Litig., 35 F.3d 717, 744 (3d Cir. 1994). No discussion of reliability or fit is included in this discussion because the parties do not base their arguments on these Rule 702 requirements.

### A. Qualification

The IMB Defendants argue that while Attorney Fletcher "is an experienced trademark lawyer," he is not qualified as an expert in this matter because he "has no experience or training in any industry relevant to this case, did not perform any survey or other analytic processes, and brings no other specialized knowledge or training." (Docket No. 69 at 2). To that end, the Defendants emphasize that Attorney Fletcher "is not experienced in food production, sale or distribution; he is not qualified to conduct, and did not conduct, any market survey's [sic] or other statistical analysis related to the marks at issue; and Atty. Fletcher has no experience in advertising or marketing." (Id. at 5). Alternatively, Martin claims that Attorney Fletcher's qualifications "are undisputed" and that his "specialized knowledge as a trademark attorney [ ] will assist the trier of fact to determine a fact in issue—whether the IMB Defendants' use of BLACK PEARL as a trademark is likely to cause confusion as to source, sponsorship, or association with Martin." (Doc. No. 70 at 7).

The United States Court of Appeals for the Third Circuit has held that Rule 702 "requires an expert witness to have 'specialized knowledge' regarding the area of testimony." Betterbox

3

Communications Ltd. v. BB Technologies, Inc., 300 F.3d 325, 327 (3d Cir. 2002). "The basis of this specialized knowledge 'can be practical experience as well as academic training and credentials,' and '[w]e have interpreted the specialized knowledge requirement liberally." Id. at 327-28 (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (citation omitted)). However, "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . ." Id. (citation omitted).

According to the "Qualifications" section of Attorney Fletcher's Expert Report, he has practiced trademark law for forty years and has prosecuted trademarks before the U.S. Patent and Trademark Office throughout his career largely by considering likelihood of confusion. (Docket No. 68-1 at 3). He has written articles, given speeches, and taught courses on trademark law. (Id. at 3-5).

Attorney Fletcher graduated from Princeton University in 1957 with a Bachelor of Arts degree. (Id.). Attorney Fletcher obtained his Juris Doctorate from Harvard Law School in 1962. (Id.). He was employed as an Associate at Simpson Thacher & Bartlett (now Simpson Thacher) in New York City and "handled[ ] virtually all of the firm's copyright and trademark practice, which included some litigation." (Id. at 2). He worked there until 1971 when he accepted an associate position with Conboy, Hewitt, O'Brien & Boardman in New York. (Id.). He became a partner at Conboy in 1974 and his practice included "almost all aspects of trademark work, including almost all of the firm's administrative and federal court trademark and copyright litigation and trial work." (Id.). After Conboy merged with Hunton & Williams, Attorney Fletcher eventually became the New York office's senior trademark partner. (Id.). Since 1997, he has been employed by Fish & Richardson P.C. in New York. (Id.). Currently, Attorney Fletcher is serving as a Senior Principal there. (Id.).

4

While the IMB Defendants argue that Attorney Fletcher is not qualified as an expert pursuant to Rule 702, based upon the aforementioned, we find that Attorney Fletcher is qualified as an expert within the meaning of Rule 702 to testify on trademark confusion given his specialized knowledge.

### B. Helpfulness

Throughout the entirety of its Reply Memorandum, the IMB Defendants argue that Attorney Fletcher's testimony is not helpful because "he offers opinions regarding common sense matters of fact which will not assist the finder of fact . . ." (Docket No. 71 at 3). In opposition, Martin argues that average citizens do not have experience in comparing trademarks and determining whether there is or is not evidence of likelihood of confusion; thus, Attorney Fletcher's specialized knowledge will greatly assist the trier of fact in determining questions of fact. (Docket No. 72 at 5).

Expert testimony is admissible only if it will assist the trier of fact to understand the evidence or to determine a fact in issue. In re Paoli R.R. Yard Litig., 35 F.3d 717, 744 (3d Cir. 1994). As the Third Circuit explained, the "ultimate touchstone [of admissibility] is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's 'technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results." Id. (quoting DeLuca, 911 F.2d 941, 956 (3d Cir. 1990)). Additionally,

> [a] judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence.

Id. at 744-45. See also Note, Expert Legal Testimony, 97 Harv. L. Rev. 797, 803 (1984) (commenting that "[t]he guiding principle of the body of rules governing the admissibility of

5

expert testimony is helpfulness" and "[p]roffered expert testimony that is helpful should be admitted unless there is an affirmative reason for excluding it, such as the possibility of undue prejudice").

While expert opinion on the ultimate factual issue of whether or not there exists a likelihood of confusion is inadmissible, expert opinion on the factual factors that develop the ultimate finding on confusion is generally proper and helpful. McCarthy on Trademarks and Unfair Competition, § 23:2.75, "Expert Testimony Relevant to the Issues of Likelihood of Confusion and Trademark Validity" (West 2011). Further,

> At the trial level, likelihood of confusion is an issue of fact. An expert's opinion on the ultimate factual issue of whether there is or is not a likelihood of confusion is not usually allowed. However, expert testimony on the factual factors that go into the ultimate finding on the confusion issue is generally quite proper and helpful to both judge and jury. Every federal circuit has its own list of about eight factors to be weighed and balanced before reaching the ultimate conclusion as to whether confusion is or is not likely.
>
> The expert testimony of expert witnesses is generally allowed on these and other factors which are used to analyze whether the designation is a valid trademark or if there is a likelihood of confusion.

Id. See also C.P. Interests, Inc. v. California Pools, Inc., 238 F.3d 690, 697 (5th Cir. 2001) (stating that neither Rule 702 or 704(a) "permits expert witnesses to offer conclusions of law"); Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, 1994 WL 529331, *9 (N.D. Ill. 1994) (noting that "courts have been reluctant to allow legal expert testimony as to the ultimate issue of whether trademark infringement has occurred" and finding that the expert, a practicing trademark attorney, could not opine on the legal standards or "ultimate issue of trademark infringement or likelihood of confusion"); and Notes of Advisory Committee on Federal Rules of Evidence, Federal Rule of Evidence 704 (1972 proposed rules) (commenting that as apparent by the 1972 Proposed Rules, that "the so-called 'ultimate issue' rule is specifically abolished by

the instant rule." And, that "[u]nder Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.").

The IMB Defendants argue that Attorney Fletcher's testimony is inadmissible because he opines on the application of law and common sense matters of fact which will not assist a trier of fact in determining whether or not there exists a likelihood of confusion. (Docket No. 71 at 2). Alternatively, Martin argues that Attorney Fletcher's testimony is admissible because he did not opine on ultimate legal conclusions, but instead, he only opined on "subsidiary factors that the jury may consider in deciding whether there is a likelihood of confusion," and his testimony will assist a trier of fact. (Docket No. 70 at 6-7).

### C. Lapp Factors[1]

The following sections review Attorney Fletcher's findings with respect to each of the Lapp factors, as set forth in his expert report, and each section accordingly permits or strikes portions of his report.

As a preliminary matter, the Court finds that Attorney Fletcher may opine on those Lapp factors which help to develop the ultimate finding on likelihood of confusion. However, the Court notes the IMB Defendants' argument that Attorney Fletcher will usurp the role of the

---

[1] The United States Court of Appeals for the Third Circuit has stated that "[i]n deciding whether similar marks create a likelihood of confusion, we have adopted a non-exhaustive test using 10 factors that have come to be known as the "Lapp factors' . . ." Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 470 (3d Cir. 2005). The factors are: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market." Id. at 470-71 citing Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983).

7

factfinder if he is permitted to testify to the full extent of his report. The IMB Defendants suggest that given the contents of Attorney Fletcher's report, his testimony will serve to instruct the jury as to the applicable law to apply to the facts. (Doc. No. 71 at 3, 5-6). In opposition, Martin suggests that "contrary to the IMB Defendants' argument, Mr. Fletcher's opinions will not usurp the rule of the Court or the jury" because his "opinions are not bald, unadorned statements of the law." (Docket No. 70 at 7).

We caution Martin that we will not permit it to introduce testimony where it can be interpreted that Attorney Fletcher is impermissibly instructing the jury as to the relevant law to apply in this case, including stating the ten Lapp factors. (See Docket No. 68-1 at 6-7). "It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Shahid v. City of Detroit, 889 F.2d 1543, 1548 (6th Cir. 1989) (quoting Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505, 510 (2d Cir. 1977). See generally Fed. R. Civ. P. 51 (informing the court as to when to instruct the jury and when parties can object to court's instructions). Therefore, the Court will not permit Attorney Fletcher's testimony when it offers an ultimate legal conclusion on likelihood of confusion, does not assist a trier of fact, or serves to spell out the law.

1. **the degree of similarity between the owner's mark and the alleged infringing mark[2]**

With respect to this first Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony is both an impermissible legal conclusion and not helpful. (See Docket No. 69 at 6; Docket No. 71 at 6-7). The Court agrees. Attorney Fletcher's testimony simply notes that Martin and the IMB Defendants both assert rights in the trademark BLACK PEARL, and that "[t]he degree of similarity between those two marks is total." (Docket No. 68-1 at 11). We will strike Attorney Fletcher's testimony with respect to Lapp factor one because it does not assist a

---

[2] Each Lapp factor is spelled out in this section with bold text.

8

trier of fact. Expert assistance is not required to see such plain observation. Therefore, Attorney Fletcher's testimony here does not satisfy the helpfulness standard of Rule 702.

### 2. the strength of the owner's mark

With respect to this second Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is both an impermissible legal conclusion and not helpful. (Docket No. 71 at 8). The Court does not agree. Attorney Fletcher opines on the inherent and acquired strengths of BLACK PEARL. (Docket No. 68-1 at 12-14). While his opinion includes common sense matters of fact for distinguishing various levels of strength, those facts are contextualized within a relatively unknown measurement system used to determine the conceptual and acquired strengths of a trademark. We will permit Attorney Fletcher's testimony with respect to this Lapp factor because it does not provide an ultimate conclusion on likelihood of confusion. His opinion on this Lapp factor therefore may assist a trier of fact and satisfies the helpfulness standard of Rule 702.

### 3. the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase

With respect to this third Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is both an impermissible legal conclusion and not helpful. (Docket No. 71 at 8-9). The Court agrees. This section is replete with common sense opinion that does not assist a trier of fact. For example, Attorney Fletcher observes that,

> [m]any people, I believe, enjoy eating, and want what they eat (1) to have an agreeable or better taste, and (2) to be assimilated into their bodies without allergic reaction or some lesser form of noticeable distress.

(Docket No. 68-1 at 15). That observation leads Attorney Fletcher to conclude that "typical purchasers and potential purchasers of Martin's and the IMB Defendants' BLACK PEARL foods

9

are exercising a reasonable degree of care and attention to their purchase . . . , but not as much as they would in buying a house or car, but more than they would in buying shoe laces or paper clips." Id.

We will strike Attorney Fletcher's testimony with respect to this Lapp factor because it is not helpful. We fail to see how such logic can assist triers of fact beyond their common faculties, and accordingly find that Attorney Fletcher's opinion on this Lapp factor fails to reach the helpfulness standard set forth in Rule 702.

### 4. the length of time the defendants have used the mark without evidence of actual confusion arising

With respect to this fourth Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is both an impermissible legal conclusion and not helpful. (Docket No. 69 at 6-7; Docket No. 71 at 9-10). The Court agrees. Here, Attorney Fletcher opines that lack of evidence of confusion between Martin's and the IMB Defendants' use of BLACK PEARL "should have a qualitative weight of about 1% in the overall determination of likelihood of confusion." (Docket No. 68-1 at 17). Attorney Fletcher assigns such a weight to lack of evidence of confusion because he states that evidence of actual confusion is rare for food products. (Id. at 16).

His opinion on rarity however, is based upon common sense:

> I know that people – at least in the families with whose members I have shared meals over the decades – sometimes don't like the food they eat. This can be because to them it just tastes awful (*e.g.*, in my case, broccoli and coffee) or produces indigestion of some sort. Most often, though, the criticism I hear is that some food or meal was just not very good. Since there is so much of that around, it doesn't seem very remarkable. At most, the dissatisfied consumer (*e.g.*, myself or my spouse) makes a mental note to avoid repeating that experience.

10

(Id. at 16-17). He states: "[t]he likelihood is great that those complaints never find their way back to the manufacturer." (Id.).

We will strike Attorney Fletcher's testimony with respect to this Lapp factor for failing to assist a trier of fact. Because Attorney Fletcher's opinion on this factor is based upon common sense and non-professional experience, we find that it fails to reach the helpfulness standard set forth in Rule 702.

**5. the intent of the defendant in adopting the mark**

With respect to this fifth Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here contains impermissible legal conclusions. (Docket No. 71 at 10). The Court agrees.

Attorney Fletcher initially notes that,

> [u]sually, intent is a matter of inference. I have seen (and inflicted) considerable deposition questioning directed to the subject, and only once seen a (probably inadvertent) *mea culpa* so bad it could not be retracted. Direct evidence of bad intent is rare.

(Id. at 17).

Attorney Fletcher then comments that IMB "is charged with notice of Martin's claim to ownership of registration of BLACK PEARL and of five other marks containing BLACK PEARL, all for seafood" because "Martin owns six such registrations." (Id.). Additionally, Attorney Fletcher says that the Third Party Defendants "were well aware of the BLACK PEARL seafood trademarks, because they had bought and sold Martin's BLACK PEARL seafood before they began selling BLACK PEARL pork." (Id.). Further, he concludes that, "[t]he IMB Defendants evidently did not perform any trademark search before selecting BLACK PEARL as their brand name for pork products. (Id. at 18). Attorney Fletcher explains that it is his "professional opinion . . . that if they [the IMB Defendants] did not make enough inquiries to

11

discover BLACK PEARL seafood, they were incredibly reckless," and "if they were aware of the BLACK PEARL seafood brand and went ahead anyway, they were incredibly reckless, perhaps even willful." (Id.). Moreover, Attorney Fletcher says that his opinion on the possibility of the IMB Defendants' recklessly or willfully adopting BLACK PEARL is "based on [his] experience in clearing (and not clearing) trademarks for registration and/or use by clients for nearly forty years." (Id.).

We will strike Attorney Fletcher's testimony on Lapp factor five because his statements are based upon assumptions relating to the conduct of the IMB Defendants. We therefore find that Attorney Fletcher's testimony on this Lapp contains impermissible legal conclusions.

### 6. the evidence of actual confusion

With respect to this sixth Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is an impermissible legal conclusion because "[c]ertainly, the trier of fact must determine the significance of this factor." (Docket No. 71 at 11). The Court refers back to the IMB Defendant's reasoning behind its rejection of Lapp factor number four as well as the Court's discussion of factor number four because Attorney Fletcher refers to that factor in his expert report. (See Docket No. 68-1 at 19). The Court agrees with the IMB Defendants. We will strike Attorney Fletcher's testimony with respect to this Lapp factor because it contains impermissible legal conclusions that are not based on anything other than common knowledge and observation; thus, we find that it fails to reach the helpfulness standard set forth in Rule 702.

### 7. whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media

With respect to this seventh Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is both an impermissible legal conclusion and not helpful. (Docket No. 71 at 11). The Court disagrees. Here, Attorney Fletcher states that:

> according to the National Pork Board, seafood and pork are very competitive. Martin SOMF ¶¶ 67-74. In addition, BLACK PEARL seafood and BLACK PEARL pork move through exactly the same distribution channels to markets and restaurants—in some cases the same markets and restaurants—where they are bought by food shoppers and diners.

(Docket No. 68-1 at 19).

We will permit Attorney Fletcher's testimony on this Lapp factor because although he reiterates the same facts given in Martin's SOMF, his assessment of the weight of this Lapp factor is based upon his professional experience and specialized knowledge. Accordingly, we find that his opinion here assists a trier of fact in determining whether there is likelihood of confusion.

### 8. the extent to which the parties' sales efforts are the same

With respect to this eighth Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is an impermissible legal conclusion. (Docket No. 71 at 11). The Court disagrees. Attorney Fletcher states, "[t]he IMB Defendants and their buyers benefit to some undetermined extent from the reputation of BLACK PEARL seafood by distributing and selling products through channels already opened by BLACK PEARL seafood." (Docket No. 68-1 at 20). We will permit Attorney Fletcher's testimony with respect to this Lapp factor because he reiterates the same facts given by Martin, but assesses the Lapp factor weight based upon his professional experience. Accordingly, we find that his opinion assists a trier of fact.

### 9. the relationship of the goods in the minds of consumers because of the similarity of function

With respect to this ninth Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here is not helpful. (Docket No. 71 at 12). The Court disagrees. Here, Attorney Fletcher states that: "[t]here is ample evidence that seafood and pork are closely related and competitive food products;" "[s]eafood and pork are primarily entrée ('center of the plate') proteins;" "[s]eafood and pork are substitutable for one another in a number of types of meals;" [g]rocery stores and supermarkets advertise and display seafood and pork in close proximity to each other;" and, "[a] number of food processors and distributors use the same trademark to market seafood and other meats including pork." (Docket No. 68-1 at 20-21). Because of all these listed reasons, Attorney Fletcher asserts that "[t]he IMB Defendants can hardly help but benefit from the identity of brand name, particularly in markets, and on menus in restaurants in which BLACK PEARL has already been accepted and approved for seafood." (Id. at 21).

We will permit Attorney Fletcher's testimony on this Lapp factor because although he reiterates the same facts given in Martin's SOMF, his assessment of the weight of this Lapp factor is based upon his professional experience and specialized knowledge. Accordingly, we find that his opinion here assists a trier of fact in determining whether there is likelihood of confusion.

**10. other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market**

With respect to this tenth Lapp factor, the IMB Defendants argue that Attorney Fletcher's testimony here will not assist the trier of fact because it offers "nothing more than common sense observations." (Docket No. 71 at 12). The Court agrees. Attorney Fletcher observes two common sense matters of fact. First, he observes that both pork and seafood are likely to be

contaminated as a result of improper handling and preparation; and that Martin's reputation therefore is partially in the hands of the IMB Defendants. Second, he observes that the consumers are accustomed to seeing a brand expand from one product to several; thus, a consumer of BLACK PEARL seafood might believe that BLACK PEARL pork is manufactured by Martin. Given those observations, Attorney Fletcher concludes that the weight of this Lapp factor is high.

We will strike Attorney Fletcher's testimony with respect to this Lapp factor because it does not assist a trier of fact. Attorney Fletcher does not base his observations regarding contamination and product expansion upon his professional experience. He rather bases them on common sense. We accordingly find that Attorney Fletcher's opinion on this Lapp factor does not assist a trier of fact.

**II. Conclusion**

For these reasons we will strike sections 1, 3, 4, 5, 6, and 10 of the expert report. An appropriate order follows.

Date: *Feb. 22, 2012*      *Maurice B. Cohill, Jr.*
　　　　　　　　　　　　　　Maurice B. Cohill, Jr.
　　　　　　　　　　　　　　Senior District Court Judge